Laura MAJORS, Plaintiff-Appellant,

v.

The HOUSING AUTHORITY OF the
COUNTY OF DeKALB GEORGIA,
et al., Defendants-Appellees.

No. 80–7134
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit B

Aug. 3, 1981.

Gary Leshaw, Atlanta Legal Aid Society, Inc., Decatur, Ga., Kenneth G. Levin, Atlanta, Ga., for plaintiff-appellant.

Charles Allen, Decatur, Ga., for defendants-appellees.

Before HILL, FAY and ANDERSON, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

Laura Majors appeals from the judgment of the district court granting summary judgment in favor of the appellee Housing Authority and denying her motion for preliminary injunctive relief. Ms. Majors alleges that she is a handicapped person within the meaning of the Rehabilitation Act of 1973 by virtue of a mental disability which requires the companionship of her pet dog. She further alleges that the Housing Authority has unlawfully discriminated against her by enforcing its ban against pets in its apartments. We find material issues of fact and therefore reverse and remand.

## FACTS AND POSTURE OF THE CASE ON APPEAL

Ms. Majors, at the time this suit was filed, was a forty-one year old unmarried woman. She has a history of psychological problems. Letters from a physician and several social workers submitted in support of her motion for a preliminary injunction indicate that she has a psychological and emotional dependence upon her pet dog, Sparky, a small poodle. In March, 1978, Ms. Majors applied for housing through the Housing Authority of the County of De-Kalb, Georgia. Since she met the financial qualifications, she was admitted to housing; however, she was warned that the Housing Authority did not allow pets within its housing units. Furthermore, the lease included a prohibition against keeping animals in the apartment. Nevertheless, Ms. Majors kept Sparky in her apartment. After several warnings, she was served with a notice of termination.

She then filed a suit for injunctive and declaratory relief alleging that the Housing Authority had violated or threatened to violate § 504 of the Rehabilitation Act of 1973, 29 U.S.C.A. § 794 (Supp.1981) by discriminating against her on account of her mental disability. The Housing Authority's motion for summary judgment and appellant's motion for preliminary injunctive relief were submitted to the district court upon the following stipulation.

At the present time both parties stipulate that the case is amenable to a final ruling on the merits and a permanent injunction with one limitation. The primary unresolved factual issue is the question of the Plaintiff's alleged mental disability.

Therefore, Defendants will stipulate for present purposes, the mental disability of Plaintiff and the fact that the mental disability requires that she be permitted to keep the dog in her apartment. Furthermore, the parties stipulate (as the parties' New Joint Case Statement shows) that the only reason behind the threatened eviction is the presence of Plaintiff's dog in her apartment, and that

the no pet provisions are uniform throughout all developments owned and operated by Defendant Housing Authority. Furthermore, the parties stipulate (as the New Joint Case Statement shows) that Defendant Housing Authority is a recipient of federal financial assistance and that Plaintiff has previously sent a letter of complaint to the United States Department of Housing and Urban Development complaining of Defendant's alleged discrimination against her. (The letter is attached to Plaintiff's brief of October 29, 1979). The parties stipulate that Plaintiff's lease with Defendant Housing Authority contains a no pet provision and that all of Defendant Housing Authority's leases contain no pet provisions.

Record on Appeal, pp. 120–121. The district court held that Ms. Majors was not an "otherwise qualified handicapped individual" within the meaning of the Rehabilitation Act because she was unable to comply with the lease provision banning animals from the apartment. In so doing, the district court held that the Housing Authority could take into account Ms. Majors alleged handicap in determining whether she was qualified for the program. The district court also held that the no pet rule was "eminently rational, particularly in high density, public housing."

## DISCUSSION

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C.A. § 794 (Supp.1981), provides in part:

No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this Title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal Financial Assistance or under any program or activity conducted by any Executive Agency or by the United States Postal Service.[1]

1. The Housing Authority does not argue that § 504 does not create a private cause of action.

We have implicitly held that § 504 does create a private cause of action in *S–1 v. Turlington,*

The Housing Authority concedes that it is a recipient of federal financial assistance and that Ms. Majors meets the financial qualifications for housing. The central controversy is whether she is an "otherwise qualified handicapped individual" inasmuch as she could not satisfy the no pet rule. For purposes of the summary judgment motion, the Housing Authority has stipulated that Ms. Majors suffers from a mental disability, and under the Act and regulations, a mental disability or disorder may be a handicap. See 29 U.S.C.A. § 706(7) (Supp.1981); 45 C.F.R. § 85.31(b)(1)(ii) (1980). The real question is whether Ms. Majors was an *otherwise qualified* handicapped person. The only Supreme Court decision to address the meaning of "otherwise qualified" is *Southeastern Community College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), in which a deaf person applied for admission to the college's nursing program and was rejected. The district court held that the plaintiff was not an otherwise qualified handicapped individual within the meaning of § 504 because even if accommodations were made in the curriculum for her deafness, her deafness would prevent "her from safely performing in both her training program and her proposed profession." *Davis v. Southeastern Community College*, 424 F.Supp. 1341, 1345 (E.D.N.C. 1976). The Fourth Circuit Court of Appeals reversed, 574 F.2d 1158 (4th Cir. 1978), but the Supreme Court reversed the court of appeals. The Supreme Court stated:

> Section 504 by its terms does not compel educational institutions to disregard the disabilities of handicapped individuals or to make substantial modifications in their programs to allow disabled persons to participate. Instead, it requires only that an "otherwise qualified handicapped individual" not be excluded from participation in a federally funded program "solely by reason of his handicap," indicating only that mere possession of a handicap is not a permissible ground for assuming an

inability to function in a particular context.

> The court below, however, believed that the "otherwise qualified" persons protected by § 504 include those who would be able to meet the requirements of a particular program in every respect except as to limitations imposed by their handicap. See 574 F.2d, at 1160. Taken literally, this holding would prevent an institution from taking into account any limitation resulting from the handicap, however disabling. It assumes, in effect, that a person need not meet legitimate physical requirements in order to be "otherwise qualified." We think the understanding of the District Court is closer to the plain meaning of the statutory language. An otherwise qualified person is one who is able to meet all of program's requirements in spite of his handicap.

442 U.S. 405–6, 99 S.Ct. 2366–67 (footnote omitted). Having decided this, the Court went on to determine whether the physical qualifications demanded by the college were necessary. In so doing, the Court concluded that neither the language, purpose, nor history of § 504 reveals an intent to impose an affirmative action obligation on all recipients of federal funds. The Court cautioned that it did not:

> [S]uggest that the line between lawful refusal to extend affirmative action and illegal discrimination against handicapped persons always will be clear. It is possible to envision situations where an insistence on continuing past requirements and practices might arbitrarily deprive genuinely qualified handicapped persons of the opportunity to participate in a covered program.... Thus, situations may arise where a refusal to modify an existing program might become unreasonable and discriminatory. Identification of those instances where a refusal to accommodate the needs of a disabled person amounts to discrimination against the handicapped continues to be an important responsibility of HEW.

635 F.2d 342 (5th Cir. 1981), and in *Tatro v. State of Texas*, 625 F.2d 557 (5th Cir. 1980). Every other court of appeals to consider the question has held that the statute does create a private right of action for enforcement. See *Kling v. County of Los Angeles*, 633 F.2d 876, 878 (9th Cir. 1980), and cases cited therein.

*Id.* at 412–13, 99 S.Ct. at 2370. The Court held that in this case the college's unwillingness to make major adjustments in its program did not constitute discrimination.

Since the Supreme Court's decision in *Southeastern Community College*, we decided *Tatro v. State of Texas*, 625 F.2d 557 (5th Cir. 1980). In *Tatro*, we held that the Rehabilitation Act required the school system to provide a handicapped student with necessary medical services in order that she could participate in a preschool program. The child, Amber Tatro, suffered from a birth defect commonly known as spina bifida. This condition required catheterization of her bladder every three to four hours in order for her to function without the danger of developing kidney infection. The process of cleaning the bladder, known as Clean Intermittent Catheterization (CIC), was a relatively simple procedure which could be performed in five minutes by a person with only thirty minutes training. The local school district had refused to provide this service to the child. The parents filed suit alleging the violation of the Education for All Handicapped Children Act of 1975 (EAHCA), 20 U.S.C.A. § 1414(a)(5) (1978) and § 504 of the Rehabilitation Act of 1973. With respect to the claim under § 504, we concluded that the child had been excluded from the school district's program by their refusal to provide the CIC. We distinguished *Tatro* from *Southeastern Community College* on the ground that in the latter case the handicapped person could never realize the principal benefits of the program even with accommodations for her handicap; however, we found that in Amber Tatro's case, she could realize the principal benefits of the pre-school program with the provision of the CIC. Furthermore, we held that the CIC process did not impose an undue financial or administrative burden on the recipient.

Therefore, in *Tatro*, we held that the recipient agency was required to provide some services and accommodations for a handicapped person who could not have participated in the covered program without some accommodation. The holding in *Southeastern Community College*, which the court below and the Housing Authority rely upon—that one must consider the necessary limitations imposed by the handicap itself in determining whether an individual is "otherwise qualified"—must be considered in the context of whether reasonable accommodations will permit the handicapped person to realize the principal benefits of the program. Indeed, the regulations recognize the necessity for reasonable accommodation:

> A recipient shall make reasonable accommodation to the known physical or mental limitations of an otherwise qualified handicapped applicant or employee unless the recipient can demonstrate that the accommodation would impose an undue hardship on the operation of its program.

45 C.F.R. § 85.53 (1980).[2] Furthermore, our decision in *Tatro* recognized that § 504 requires the recipient to provide some services to handicapped persons. It does not, however, require services that impose an undue financial or administrative burden.

With these principles in mind, we turn to the stipulated facts in this case. Defendants have stipulated for purposes of summary judgment that Ms. Majors suffered from a mental disability which requires the companionship of her dog. By enforcing the no pet rule, the Housing Authority has effectively deprived Ms. Majors of the benefit of the housing program. Unlike the circumstances in *Southeastern Community College*, it is possible for Ms. Majors to enjoy the full benefit of the cov-

---

2. Appellee objects to this regulation being raised for the first time on appeal. While it is true that this court will not consider a theory raised for the first time on appeal, *Excavators and Erectors, Inc. v. Bullard Engineers, Inc.*, 489 F.2d 318 (5th Cir. 1973), we do not believe that this rule forbids us from considering and relying upon this regulation. Ms. Majors' argu-

ment to the district court was that the Housing Authority was obligated under the Act to accommodate her known physical and mental limitation. This regulation merely provides support or legal authority for that proposition. That is not the same as raising a new issue or theory on appeal.

ered program provided that some accommodation is made for her alleged disability. We note further that the qualification in the instant case, *i. e.*, the no pet rule, is different from the qualifications in the *Southeastern Community College* case which were inherent in the program and in the nursing profession. In the summary judgment posture of this case, we must recognize as reasonable the inference that the Housing Authority could readily accommodate Ms. Majors. Even if the "no pet" rule is itself imminently reasonable, nothing in the record rebuts the reasonable inference that the Authority could easily make a limited exception for that narrow group of persons who are handicapped and whose handicap requires (as has been stipulated) the companionship of a dog. Such accommodation falls well within the kind of reasonable accommodation required by the regulation and *Tatro*. Therefore, having determined that on the basis of the stipulated facts there are questions of fact as to whether Ms. Majors is an otherwise qualified handicapped individual, we must remand for an evidentiary hearing.

In summary, having determined that reasonable inferences from the stipulated facts create genuine issues of fact, the case is remanded for a trial on the questions of whether Ms. Majors suffers from a handicap, whether the handicap requires the companionship of the dog and what, if any, reasonable accommodations can be made. It goes without saying that we do not express any opinion on the merits of any of these questions nor do we suggest that these are the only questions involved. We emphasize that we are presented with a stipulated statement of facts in which the appellee conceded, albeit for the limited purpose of summary judgment, the existence of a mental disorder requiring the companionship of the dog. Furthermore, we have interpreted these stipulated facts with the benefit of a decision of the court rendered after the district court's opinion in this case.

Accordingly, the judgment of the district court is

REVERSED AND REMANDED.