The SCHUETT INVESTMENT
COMPANY, Appellant,

v.

Donna ANDERSON, Respondent.

No. CX–85–1367.

Court of Appeals of Minnesota.

April 22, 1986.

James T. Hynes, St. Paul, for appellant.

David L. Ramp, Minneapolis, for respondent.

Heard, considered and decided by HUSPENI, P.J., and FOLEY and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

Schuett Investment Company (Schuett) brought an unlawful detainer action against Donna Anderson after Schuett terminated Anderson's lease "for cause." Schuett claimed that Anderson's failure to remedy fire code violations provided good cause to terminate the lease. The trial court denied Schuett a writ of restitution, finding that Anderson was a handicapped individual within the meaning of 29 U.S.C.A. § 794 residing in federally subsidized housing, and that Schuett failed to reasonably accommodate her when it requested that she remedy the fire code violations. Schuett appeals from the trial court's judgment denying a writ of restitution. We affirm.

## FACTS

Schuett took over management of a multi-building housing development known as Hillside Terrace on October 1, 1983. Anderson and her eighteen year old daughter, who suffers from rheumatoid arthritis, receive housing assistance under a federally subsidized housing program, and have lived in a unit at Hillside Terrace under a one year lease from February 1, 1982 until January 1, 1983, and since that time under a month to month lease.

Section 105(b) of Anderson's lease prohibits tenants from engaging in "activities injurious to the reputation of the building," disturbing other residents, or acting in ways likely to increase insurance premiums on the building. Section 105(b) further provides that violation of one of these prohibitions is grounds for termination.

Section 106 of the lease pertains to the condition of the apartment. It provides in part that the tenant "agrees to take good care of apartment and fixtures and keep them in a clean and sanitary condition *and comply with all laws, health and policy requirements with respect to said premises.*" (emphasis added).

Section 108 grants Schuett access to the individual units in cases of emergency or upon one day's notice for purposes of inspection and repair work.

A final relevant lease provision is section 120, and it applies to the lease termination of an individual receiving housing assistance under section 8 of the United States Housing and Community Development Act of 1974. Section 120 provides that a lease may be terminated for (1) material noncompliance with the lease, (2) material failure to fulfill obligations under any state landlord and tenant act, or (3) "other good cause." The lease defines "material noncompliance" as "[o]ne or more substantial violations of the Lease or * * * repeated minor violations of the Lease which disrupt the livability of a building, adversely affect the health or safety of any person or the right of any tenant to the quiet enjoyment of the leased premises and related project facilities" or interfere with building management. Any termination must be after written notice, and when termination is for "other good cause," termination is not effective earlier than thirty days after receipt of the termination notice.

During her occupancy of Hillside Terrace, Anderson has kept boxes piled in her unit, using it for all practical purposes as a storage unit in addition to a residence. The prior property manager wrote to Anderson in August 1981, September 1981, and May 1982 notifying her that the excess of boxes and materials constituted a fire hazard but Anderson ignored the notices.

Schuett also experienced difficulties with Anderson about the stored boxes. After

Anderson refused access to her unit in order for Schuett's maintenance people to complete work required by the state agency administering the federal housing program, Schuett wrote to Anderson on April 9, 1985 stating that:

> [f]ailure to let maintenance in [on April 12] is a violation of your lease. * * * If the tenent [sic] fails to respond as requested, the tenent [sic] receives a second and final letter from the property manager.

The property manager characterized this letter as the first warning in the procedure by which a lease is terminated "for cause."

On April 12, 1985, Anderson again denied access to the maintenance workers, and the property manager reminded Anderson by letter that Schuett had a right to access under the lease and that:

> this is your second and final warning on the matter. Our maintenance staff must be permitted access into your unit on or before April 19, 1985 to perform the required maintenance work. Failure to allow us into your unit by said date will result in immediate termination of your lease effective May 31, 1985.

Schuett also noted in the letter that the local fire department had written to Anderson regarding the storage of flammable materials within the unit, and that all boxes and items in the furnace room, hallways, and doorways were to be removed prior to April 19.

On April 19, 1985, the city inspector inspected Anderson's unit, and discovered several fire code violations resulting from the storage of boxes and other items. The inspector issued an order requiring the removal of all combustibles within fourteen days.

On April 29, 1985, the property manager wrote to Anderson terminating the lease effective May 31 for failure to remove items from the unit. In early May the city inspector and fire chief made inspections on two separate occasions, and both ordered Anderson to reduce the number of items stored within the unit. In late May,

Anderson refused access to the fire chief on two separate occasions.

Pursuant to the property manager's letter of April 29, Anderson's lease terminated on May 31. Thereafter, Schuett commenced an unlawful detainer action. On the two days before the June 14th unlawful detainer hearing, Anderson and a friend removed boxes from the unit. On June 15 the fire chief reported that Anderson's unit was in an acceptable condition.

In the unlawful detainer proceeding, Schuett claimed that Anderson violated the terms of her lease, and that Anderson never requested assistance in cleaning her apartment. Anderson argued in response that as a result of an accident in January 1985 she was disabled from moving the boxes, and that she was not provided enough time to clear up the fire code violations.

The trial court found that Anderson was a tenant in a federally subsidized housing program, that she is handicapped by reason of an injury sustained in January 1985, and that because of the injury Anderson is unable to lift heavy weight. Furthermore, the trial court found that Schuett was the recipient of federal funds, and thus he was required to accommodate handicapped persons under 29 U.S.C.A. § 794. Because Schuett did not accommodate Anderson by insisting that she clean her apartment by the end of April, the trial court concluded that good cause did not exist to terminate Anderson's lease. Schuett appeals.

## ISSUE

Did the trial court err in refusing to issue a writ of restitution?

## ANALYSIS

■ An unlawful detainer proceeding is civil in nature, and "the only issue for determination is whether the facts alleged in the complaint are true." *Minneapolis Community Development Agency v. Smallwood*, 379 N.W.2d 554, 555 (Minn.Ct. App.1985) *pet. for rev. denied*, (Minn. Feb. 19, 1986) (citing Minn.Stat. § 566.15 (1984)).

On appeal our standard of review is whether the trial court's findings of fact are clearly erroneous. *Id.* (citing Minn.R. Civ.P. 52.01). We will not determine that a finding is clearly erroneous absent a "clear demonstration that it is without substantial evidentiary support or that it was induced by an erroneous view of the law." *Ortendahl v. Bergmann,* 343 N.W.2d 309, 311 (Minn.Ct.App.1984) (citation omitted).

Schuett argues that Anderson's lease terminated on May 31, 1985 for good cause because the excess boxes, bags and paper in Anderson's unit, present since 1981, constitute a fire hazard, duly verified by the April 1985 fire code violations cited by the city inspector and fire chief and by the fact that Anderson failed to clean the unit within the time restrictions set out in the various letters she received even though she had an empty garage. Schuett also claims that Anderson never requested assistance from Schuett in moving her belongings.

Schuett adds that Anderson also violated the lease by refusing access to maintenance people. Moreover, Schuett argues that Anderson's claim about her disability is without merit because the fire hazard has been in existence since 1981, and Anderson only recently injured her back in 1985. According to Schuett, Anderson is not handicapped within the meaning of 29 U.S.C.A. § 794 for the reason that she was not handicapped prior to becoming a beneficiary under a federal program. Even assuming she is handicapped within the meaning of the statute, Schuett claims Anderson is not entitled to preferential treatment by way of being allowed to maintain a fire hazard.

As a final matter, Schuett asserts that any actions taken by Anderson after the effective date of termination (May 31, 1985) should not be considered because "Schuett is aware of no law which allows a tenant to cure a non-rent default after the lease has been terminated and thereby create a new lease." According to Schuett, this is not a situation in which there is a nonpayment of rent and it may be proper to allow the tenant to pay the rent plus the costs of a proceeding and thereby reinstate the original lease. *See* Minn.Stat. § 504.02 (1984). In such a case, the landlord would be made whole. In a non-rent case such as this, however, Schuett asserts that it would not be made whole and instead it would be deprived of the only tool it has, the unlawful detainer action, to force compliance with code provisions. Thus, Schuett argues the fact that Anderson cleaned her apartment after May 31 is irrelevant because the lease had already terminated.

Anderson contends she is disabled due to a back injury as evidenced by a letter Schuett received from Anderson's doctor describing her inability to lift heavy weights, thus proving the existence of her handicap. Anderson claims, and the trial court found, that because Schuett receives federal funds, it is required to reasonably accommodate disabled and handicapped persons under the Rehabilitation Act of 1983. Anderson asserts the record is clear that she informed Schuett of her back problems, but that none of Schuett's employees made an affirmative offer of help. Anderson also argues that there is insufficient "good cause" to evict her. According to Anderson, after she learned that Schuett would not help her, she hired children in the neighborhood to move boxes. Anderson's final argument is that her actions after May 31 eliminating the fire hazard should be considered because in an analogous case, the nonpayment of rent, a tenant may redeem his tenancy up to the time of the court's order. *See McCusker and Associates, Inc. v. Omodt,* 359 N.W.2d 747, 748 (Minn.Ct.App.1985) *pet. for rev. denied* (Minn. Mar. 29, 1985) (citing Minn.Stat. § 504.02 (1982)). Here, she removed the boxes creating the fire hazard prior to the time of hearing and thus therefore redeemed her tenancy.

■ Under the Rehabilitation Act of 1973:

No otherwise qualified handicapped individual * * * as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be

subjected to discrimination under any program or activity receiving Federal financial assistance * * *.

Rehabilitation Act of 1973, § 504, 29 U.S.C.A. § 794 (1985). A "handicapped individual" is defined in part as "any person who * * * has a physical or mental impairment which substantially limits one or more of such person's major life activities * * *." 29 U.S.C.A. § 706(7)(B) (1985). A physical or mental impairment includes any physiological disorder or condition affecting the musculoskeletal body system. 45 C.F.R. § 84.3(j)(2)(i) (1985). "Major life activities" means functions like "caring for one's self, *performing manual tasks*, walking, seeing, hearing, speaking, learning, and working." *Id.* § 84.3(j)(2)(ii) (emphasis added).

The trial court's finding that Anderson has a physical handicap within the meaning of the statute is not clearly erroneous.

 The trial court also found that Schuett receives federal funds under the section 8 housing program, *see* Housing and Community Development Act of 1974, Pub.L. No. 93–383, 88 Stat. 653–67 (codified as amended in scattered sections of 42 U.S.C.A.), and was therefore required to reasonably accommodate Anderson, which it failed to do so by insisting that Anderson clean up her apartment while she was physically unable to do so. That finding is supported by section 504 of the Rehabilitation Act, which requires some affirmative steps to accommodate handicapped persons. *See American Public Transit Association v. Lewis*, 655 F.2d 1272, 1278 (D.C. Cir.1981) ("refusal to take modest, affirmative steps to accommodate handicapped persons might well violate section 504"); *Majors v. Housing Authority of DeKalb*, 652 F.2d 454, 457–58 (5th Cir.1981) (tenant could "enjoy the full benefit of the [federally subsidized housing] program provided that some accommodation is made for [the tenant's] alleged disability"). Furthermore, section 504 is implemented by a federal regulation which provides:

A recipient [of federal funds] shall make reasonable accommodation to the known physical or mental limitations of an otherwise qualified handicapped applicant or employee unless the recipient can demonstrate that the accommodation would impose an undue hardship on the operation of its program.

45 C.F.R. § 84.12(a) (1985). This regulation, while directly applicable to employment practices, recognizes the need for reasonable accommodation in the housing context. *See Majors*, 652 F.2d at 457–58.

 The lease violation in this case is causally related to Anderson's handicap. Schuett's accommodation of Anderson's handicap would have insured Anderson's continued enjoyment of federally subsidized housing.

## DECISION

The trial court did not err by denying Schuett's request for a writ of restitution.

Affirmed.