CITY WIDE ASSOCIATES & another[1] *vs.* ELEANOR
PENFIELD.

Hampden. October 4, 1990. - January 15, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Landlord and Tenant*, Eviction, Handicapped person.

In an eviction proceeding against a mentally disabled tenant whose tenancy was federally subsidized, in which the tenant's defense to eviction focused on § 504 of the Federal Rehabilitation Act of 1973, 29 U.S.C. § 794 (1988), prohibiting discrimination on the basis of handicap, the judge was warranted in concluding that, given the superficiality of the damage to the premises caused by the tenant, the reimbursement available to the landlord for tenant-caused damage, and the absence of evidence of adverse impact on other tenants, the tenant was "otherwise qualified" under § 504, and that eviction on this record would be discriminatory and therefore unlawful. [142-145]

SUMMARY PROCESS. Writ in the Hampden County Division of the Housing Court Department dated March 13, 1989.

The case was heard by *William H. Abrashkin*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Christopher Nolan* for the plaintiffs.

*Henry Korman* for the defendant.

*Ernest Winsor & William G. Crane*, for Ruby Rogers Advocacy & Drop-In Center & another, amici curiae, submitted a brief.

---

[1] Al Katz.

The record is unclear as to whether City Wide Associates is a legal entity capable of suing or being sued. In any event, Al Katz is an individual plaintiff. Throughout this opinion we shall refer to City Wide Associates and Al Katz as the landlord.

O'CONNOR, J. This is an eviction proceeding brought by the plaintiff landlord against the defendant tenant whose residential tenancy is subsidized under the Federal Section 8 Moderate Rehabilitation Program administered by the Housing Allowance Project, Inc. (HAP). A judge in the Housing Court granted possession to the tenant and the landlord has appealed. We transferred the appeal here from the Appeals Court on our own initiative, and we now affirm the judgment below.[2]

The trial judge filed a memorandum of findings, rulings, and order for judgment on April 21, 1989. He found that the subsidized tenancy had begun on or about March 1, 1988, that the tenant was seventy-seven years old when this case was commenced, and that, at the time the findings were made, the tenant suffered from a serious mental disability manifested by her hearing voices from within the walls of the apartment she occupied. In response to such "auditory hallucinations," the judge found, the tenant "strikes back by hitting at the walls with a broom or stick and by throwing objects, and sometimes water, at the walls. This has caused a large number of nicks and gouges in the walls, ceiling, and door casings at one end of the apartment, as well as water stains and soiling of the carpet." The lease required the tenant not to "deface or otherwise damage the dwelling unit."

After a view ordered by the judge, the court's chief housing specialist reported that the probable cost of materials and labor to repair the damage done by the tenant would be $519. The judge characterized the damage as "superficial." Also, he observed that "counsel appeared to agree that the contract [between the landlord and HAP] allows the [landlord] up to two months' contract rent as reimbursement from HAP for tenant-caused damage," and that the estimated cost to repair the apartment was less than one month's rent. Lastly, the judge noted that "[t]here was no substantial evidence that the tenant has violated paragraph 8 (f) of the

---

[2]We acknowledge the amicus curiae brief of Ruby Rogers Advocacy & Drop-In Center and Coalition for the Legal Rights of the Disabled.

lease, in which she agreed not 'to make noises or acts which disturb the quiet, security or welfare of the tenants.' "

In the Housing Court, the tenant's defense to the eviction proceeding focused on § 504 of the Federal Rehabilitation Act of 1973, 29 U.S.C. § 794 (1988), prohibiting discrimination on the basis of handicap. Section 504 states in relevant part, "No otherwise qualified individual with handicaps . . . shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." The critical substantive question in this case is whether the tenant was an "otherwise qualified individual" within the meaning of that section.

In *Southeastern Community College* v. *Davis*, 442 U.S. 397, 406 (1979), the United States Supreme Court made clear that an "otherwise qualified" person is not one who, but for his or her limitations, would be able to meet a program's requirements, but instead is "one who is able to meet all of a program's requirements in spite of his handicap." Thus, the statute does not require recipients of Federal assistance to take "affirmative action" in the form of adjustments to existing programs that would impair the programs' integrity or would otherwise be fundamental or substantial. *Id.* at 410-411. Nonetheless, the Supreme Court also made clear in *Southeastern Community College* that, in situations where Congress's goals may be met without undue financial or administrative burdens on the recipient of Federal funds, "refusal to modify an existing program might become unreasonable and discriminatory." *Id.* at 413. The Supreme Court "thus struck a balance between the statutory rights of the handicapped to be integrated into society and the legitimate interests of federal grantees in preserving the integrity of their programs: while a grantee need not be required to make 'fundamental' or 'substantial' modifications to accommodate the handicapped, it may be required to make 'reasonable' ones." *Alexander* v. *Choate*, 469 U.S. 287, 300 (1985). See *School Bd. of Nassau County* v. *Arline*, 480 U.S. 273, 277,

287-288 n.17 (1987); *Whittier Terrace Assocs.* v. *Hampshire*, 26 Mass. App. Ct. 1020 (1989).

In this case, the judge was confronted with the question whether the landlord's obligation under § 504 reasonably to accommodate the tenant's mental illness and resulting damage to the apartment required the landlord to permit the tenant to continue to occupy the apartment despite the tenant's violation of the lease provision prohibiting defacement or damaging of the dwelling unit. The judge reasoned that "[b]ecause the tenant pleads unlawful discrimination as an affirmative defense the burden is on her to prove her claim. As with any other discrimination claim, the burden is on the tenant to prove a *prima facie* case of discrimination. The burden of production (but not the ultimate burden of persuasion) then shifts to the respondent to prove that the challenged act was not discriminatory." Neither the landlord nor the tenant contests that allocation of the burdens of production of evidence and persuasion.

According to the judge's memorandum, the tenant met her burdens of production and persuasion by proposing a modification of her obligations under the tenancy agreement which the judge concluded would constitute a "reasonable accommodation" of the tenant's handicap and thus would entitle her to continued possession at least in the absence of further significant damage. The proposal was that the landlord would "forbear from further eviction steps (presumably, as long as the tenant's conduct does not change substantially) to give her an opportunity to pursue a program of outreach and counselling." This, the judge concluded, was "a reasonable step as long as more substantial damage is not caused. The [landlord] has not shown that it would be greatly prejudiced by holding off further and giving the tenant further opportunity to find the assistance needed to address the problem." In arriving at his conclusion that the tenant was "qualified" to remain in the unit "absent a substantial change in circumstances," the judge expressly took into account the cost of the damage caused by the tenant due to her mental illness, which he characterized as "small" (less than one month's

rent), the fact that, under the contract between the landlord and HAP, the landlord was entitled to reimbursement of up to two months rent for tenant-caused damage, and the lack of evidence that other tenants were affected by the defendant tenant's conduct.

"[T]he question of who is 'otherwise qualified' and what actions constitute 'discrimination' under [§ 504 of the Federal Rehabilitation Act of 1973] would seem to be two sides of a single coin; the ultimate question is the extent to which a grantee is required to make reasonable modifications in its programs for the needs of the handicapped." *Alexander* v. *Choate, supra* at 299 n.19. Whether a tenant's proposed accommodation of a disability is "reasonable" within the meaning of the relevant decisions is not susceptible of precise measurement, but we are persuaded that the judge exercised proper judgment in this case. Indeed, the landlord's only argument that meets the requirements of Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975), is that the tenant failed to show that she would cooperate with any program involving counselling or medication or otherwise take steps to correct the mental condition that prompted her destructive conduct. Even so, given the superficiality of the damage, the reimbursement available to the landlord, as found by the judge, and the absence of evidence of adverse impact on other tenants, we agree with the judge that, in the absence of further significant damage, the tenant is "otherwise qualified" under § 504, and that eviction on this record would be discriminatory and therefore unlawful.[3] For somewhat comparable cases, see *Whittier Terrace Assocs.* v. *Hampshire, supra*; *Majors* v. *Housing Auth. of DeKalb, Ga.*, 652 F.2d

---

[3]The tenant filed a counterclaim which was severed from the landlord's summary process for eviction proceeding. The tenant has requested this court to "include in any remand order an instruction authorizing the trial court to consider the time spent on appeal in computing any fee award predicated on her Section 504 counterclaim." We decline to issue an instruction relative to a fee award. There is no order of remand, and the counterclaim is not before us.

454 (5th Cir. 1981); *Schuett Inv. Co.* v. *Anderson*, 386 N.W.2d 249 (Minn. Ct. App. 1986).

*Judgment affirmed.*