### RICHARD CRANE *vs.* COMMISSIONER OF THE DEPARTMENT OF EMPLOYMENT AND TRAINING.

Essex. January 7, 1993. - March 23, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & GREANEY, JJ.

*Employment Security*, Eligibility for benefits, Good cause, Voluntary unemployment.

A claimant seeking unemployment benefits, who had left his full-time employment in order to retain Supplemental Security Income (SSI) benefits, did not demonstrate that he left employment for good cause attributable to the employing unit or that his reason for leaving was such as to render his departure involuntary, as set forth in G. L. c. 151A, § 25 (*e*); further, the claimant was disqualified from receiving unemployment benefits under G. L. c. 151A, § 24 (*b*), where the record warranted the finding that he was not "available for work" as a result of his limiting his availability to work in order to retain his SSI benefits. [661-662]

CIVIL ACTION commenced in the Lawrence Division of the District Court Department on May 7, 1990.

The case was heard by *Kevin M. Herlihy*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Richard Crane*, pro se.

*Beverly I. Ward*, Assistant Attorney General, for the defendant.

ABRAMS, J. Richard Crane, the plaintiff, appeals from the decision of the Lawrence District Court upholding the decision of the Commissioner of the Department of Employment and Training (department) denying Crane unemployment benefits. We transferred the case to this court on our own motion. We affirm.

The facts as found by the department's review examiner include the following. Richard Crane has been receiving Sup-

plemental Security Income (SSI) benefits since 1979. Crane was a client of the Massachusetts Rehabilitation Commission prior to his employment at a department store. Crane is currently enrolled in an accounting program at Northeastern University as part of a vocational rehabilitation program.

Regulations governing social security disability payments permit an individual to engage in full-time employment and still receive full SSI benefits for a nine-month "trial work period." After the nine-month trial work period, SSI benefits cease if the claimant continues full-time employment. 20 C.F.R. § 404.1592 (1992). Some of Crane's employment prior to his job at the department store counted toward his trial work period calculation. Notwithstanding the "trial work period" restrictions, Social Security policy allows a claimant to work part-time and earn up to $300 a month while retaining full disability benefits.

Crane gained employment as a full-time sales associate at the department store (employer) in June, 1989. Crane did not discuss his SSI benefits nor any restrictions on his ability to work full-time with his employer.

In October, 1989, Crane's trial work period was about to end. Crane informed his employer that it would not be in his financial interest to continue working full time as doing so would terminate his SSI benefits. Crane gauged that his net earnings from his full-time position would be less than his SSI benefits alone. Crane concluded that the most profitable course would be to continue his employment on a part-time basis, which would enable him to continue receiving full SSI benefits while continuing his vocational training and supplementing his SSI benefits with income from his employment. After Crane apprised his employer of his circumstances, he was allowed to work part-time through December, 1989, with the understanding that in December his employment situation would be evaluated again.

In January, 1990, the employer informed Crane that he would have to return to full-time status in order to continue his employment. Crane decided to leave his job in order to

keep his SSI benefits.[1] Crane filed a claim for unemployment compensation, which the department's local office service representative denied on a finding of voluntary separation without good cause attributable to the employer.

Pursuant to G. L. c. 151A, § 42 (1990 ed.), we review the findings and decision of the department's board of review (board) in accordance with the standard of review set out in G. L. c. 30A, § 14 (7) (1990 ed.), the State Administrative Procedure Act (Act).[2]

General Laws c. 151A, § 25 (e) (1990 ed.), provides, in relevant part, that no unemployment benefits shall be paid to an individual "[f]or the period of unemployment next ensuing and until the individual has had at least four weeks of work and in each of said weeks has earned an amount equivalent to or in excess of his weekly benefit amount after he has left his work (1) voluntarily without good cause attributable to the employing unit or its agent. . . . An individual shall not be disqualified from receiving benefits under the provisions of this subsection, if such individual establishes to the satisfaction of the commissioner that his reasons for leaving were for such an urgent, compelling and necessitous nature as to make his separation involuntary." Although "the statute expressly provides that the law should be liberally construed to establish its purpose, which is 'to lighten the burden which now falls on the unemployed worker and his family,' " *Reep* v. *Commissioner of the Dep't of Employ-*

---

[1]Although Crane characterizes his employer's actions as having terminated his job, and implies that his employer's offer of full-time employment was insincere and was prompted by Crane's statement that he would file for unemployment benefits, this characterization contradicts findings of the review examiner adopted by the board. These findings are supported by substantial evidence. Crane for the most part frames his argument in terms of his having left his employment in order to maintain his SSI benefits.

[2]Section 14 (7) mandates that we give "due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it." Section 14 (7) also allows us to set aside or modify the board's decision if it was not based on substantial evidence, or if it otherwise violated the law or the board's statutory authority or jurisdiction. G. L. c. 30A, § 14 (7) (1990 ed.).

*ment & Training*, 412 Mass. 845, 847 (1992), Crane bears the burden of proving either that he left his employment for good cause attributable to the employing unit, or that his reason for leaving was of an urgent, compelling, and necessitous nature that would render his departure involuntary. *Sohler* v. *Director of the Div. of Employment Sec.*, 377 Mass. 785 (1979). The nature of the circumstances of each individual case, and the degree of compulsion that such circumstances exert on a claimant, must be objectively evaluated. See *Reep* v. *Commissioner of the Dep't of Employment & Training, supra* at 848.

There was ample evidence to support the conclusion that Crane was capable of continuing his employment on a fulltime basis. Crane did not leave his employment because he "was required by his employer to perform work that was 'clearly antithetical to that for which [he] was initially employed,'" *Guarino* v. *Director of the Div. of Employment Sec.*, 393 Mass. 89, 93 (1984), quoting *Sohler* v. *Director of the Div. of Employment Sec., supra* at 789. The board determined that Crane chose to leave his employment not because of a medical reason or inability to work, see, e.g., *Uvello* v. *Director of the Div. of Employment Sec.*, 396 Mass. 812, 815 (1986) (insurmountable transportation problems can constitute good cause to decline otherwise suitable employment), but as a result of an evaluation of the options open to him.

Crane contends he would have suffered financial harm and stress if he had continued at his employment on a full-time basis and lost his SSI benefits. He asserts that that is sufficient basis to conclude that his separation from employment was involuntary. We do not agree. General stress and dissatisfaction with one's employment do not amount to urgent and compelling reasons adequate to make leaving employment involuntary. See *Fanion* v. *Director of the Div. of Employment Sec.*, 391 Mass. 848 (1984); *D'India* v. *Director of the Div. of Employment Sec.*, 387 Mass. 1005 (1982); *Sohler* v. *Director of the Div. of Employment Sec., supra.* The full-time hourly wages that the employer offered to Crane exceeded

his part-time hourly wages.[3] The change in the terms of Crane's employment was not one that made Crane incapable of continuing his employment. Crane believed that he would lose his SSI benefits if he continued to work full-time. He chose to retain those benefits. In *Bellotti* v. *Director of the Div. of Employment Sec.*, 382 Mass. 600 (1981), we stated that, when a claimant limits his or her availability for work in order to retain Social Security benefits, the board could be warranted in finding that the claimant was not "available for work" and was disqualified from receiving unemployment benefits, under G. L. c. 151A, § 24 (*b*). Similarly, limiting availability for work to retain SSI benefits does not permit a claimant to obtain unemployment benefits.

Crane's reliance on *City Wide Assocs.* v. *Penfield*, 409 Mass. 140 (1991), to support his contention that his employer had agreed permanently to change Crane's status from full-time to part-time is misplaced. *Penfield* was decided under § 504 of the Federal Rehabilitation Act of 1973, 29 U.S.C. § 794 (1988); the Rehabilitation Act applies only to the Federal government and programs receiving Federal assistance. It does not apply to private employers not receiving Federal funds. The temporary accommodation that the employer made in allowing Crane to work part-time during November and December was advantageous to Crane and the employer. It was not required by the Rehabilitation Act.

The decision of the District Court judge is affirmed.

*So ordered.*

---

[3]Crane learned just prior to leaving that his hourly wage would be increased if he continued on a full-time basis.