[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
RULING ON PLAINTIFF'S REQUEST FOR EXECUTION
The dispositive question in this matter is whether federal and state laws outlawing discrimination in housing prohibit the eviction of a mentally disabled defendant from his federally subsidized apartment because of his failure to comply with the plaintiff's pet policy.
This matter is before the court in connection with the plaintiffs request for an execution. General Statutes 47a-42. In May, 1992, the plaintiff commenced the present summary process action alleging that the defendant had failed to comply with its pet policy in that he both failed to walk his dog in the designated area and failed to use a "pooper scooper" to clean up after it. In August, 1992, after meeting with the Housing Specialist; General Statutes 47a-69; the parties entered into a stipulated agreement which required the defendant to "walk and toilet his dog in the area of the complex dumpsters and thoroughly remove and dispose of all solid waste materials belonging to his dog." The defendant also agreed to keep his dog on a leash while walking it.
Ten days after the parties entered into the stipulation, the plaintiff filed an affidavit of non-compliance alleging that the defendant had violated the agreement by walking and toileting his dog in areas other than by the dumpster. After further negotiations with the Housing Specialist, the parties entered into a modified stipulation on October 20, 1992. That stipulation provided that the defendant agreed to walk and toilet his dog in an area to the rear and side of his building, and that he would be responsible for removing the dog's waste. The designated area was specifically identified in the stipulation after the parties and the Housing Specialist personally inspected that area and received assurances from the defendant that he would be able to comply with the modified agreement.
One week after the modified stipulation was approved the plaintiff filed another affidavit of non-compliance, again alleging that the defendant was continuing to toilet his dog in non-designated areas. In response to the defendant's objection to the request for an execution, an evidentiary hearing was conducted. The testimony disclosed the following. CT Page 6328-D
The defendant is a chronic schizophrenic who also suffers from severe learning disabilities. As a result of his illness his judgment is poor and his social skills impaired. He has difficulty following directions and understanding the consequences of his behavior. His failure to adhere to rules and directives is not willful, but rather the result of his impaired judgment. His therapist believes that he is "marginally capable of independent living."
The defendant's sole source of income is Supplemental Security Income as supplemented by a part-time job delivering papers. For many years he was homeless, living in his car, in shelters, or on the street. His one companion and only friend over the past years has been his dog. The defendant would rather be homeless than give up his dog.
In 1991, the defendant rented an apartment at Woodside Village, a complex for elderly and handicapped persons who are capable of independent living. Woodside Village is a recipient of federal Section 8 funds. Section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437f; and Kendzierski v. Goodson,21 Conn. App. 424 (1990). Accordingly, the plaintiff is subject to federal laws prohibiting discrimination in housing on the basis of handicap. The Fair Housing Amendments Act, 42 U.S.C. § 3601
et. seq; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.
In accordance with its pet policy, the plaintiff permits tenants to have pets. Section 4 of that Policy provides:
PET CARE/CLEANLINESS:
 a. Designated "Dog Walk" areas: Dogs will be walked and curbed along the street gutter. Dogs cannot be walked on the sidewalk areas in front of any building.
 b. Dog owners must agree to use a "pooper scooper" to clean up behind their pet and properly dispose of all waste/excrement in any areas caused by their pet. Waste materials must be disposed of in sealed plastic bags and placed in the dumpster.
Shortly after the defendant took occupancy it became evident that he was having difficulty training and managing his dog. The dog would remain in the apartment for extended periods of time, barking and whining. Occasionally the dog would urinate or defecate in the common areas of the building. The defendant was CT Page 6328-E also observed disciplining the dog inappropriately by dragging him with an excessively tight collar. All of these matters were of concern to the defendant's elderly neighbors who were afraid for their safety and whose quiet enjoyment of their apartments was disrupted by the dog. After complaints were made to the Town Health Inspector, the Humane Society and the police, the plaintiff, through its on-site social worker, arranged for a dog trainer to work with the defendant. In addition she purchased a "pooper scooper" for him and offered to establish a schedule of supervised walks for the defendant and his dog. Despite these efforts complaints from the neighbors persisted, causing the plaintiff to reluctantly initiate this summary process action after providing the defendant with federally required pre-termination notices.
In support of its application for an execution the plaintiff presented the testimony of a number of residents of Woodside Village. Each complained of the dog's barking and menacing nature and of the defendant's failure to walk it in the designated areas. The dog's waste was observed on the sidewalk, parking lot and other public, common areas. Each of the witnesses testified that they had personally observed the defendant toileting his dog in areas not designated in the stipulations. Each also described how the defendant and his dog disrupted their quiet enjoyment of the premises.
The defendant does not seriously dispute that he has failed to comply with the amended stipulation. Rather, he claims that the plaintiff, as a recipient of federal funds, is required, but has failed, to reasonably accommodate his disability, as required by the Federal Fair Housing Act, and its state counterpart, Sec.46a-54(a)(6)(c) of the General Statutes, both of which prohibit discrimination in housing on the basis of handicap. He claims that these laws prohibit his eviction unless the plaintiff can demonstrate that all reasonable alternatives to eviction have first been tried.
In 1968, Congress enacted the Fair Housing Act of 1968 as Title VIII of the Civil Rights Act. Pub.L. No. 90-284, 82 Stat. 73
(1968) (codified at 42 U.S.C. § 3601 (1988)). The purpose of the Act was to establish a clear national policy against discrimination in housing. As originally enacted, the Fair Housing Act included as protected classes persons discriminated against on the basis of race, color, religion, sex or national origin. Id. In 1988, Congress adopted the Fair Housing Amendments Act ("FHAA") to prohibit housing discrimination against persons with physical or CT Page 6328-F mental handicaps. Pub.L. No. 100-430, 102 Stat. 1619 (codified at42 U.S.C. § 3601-3619 (1988)). The House Judiciary Report set forth the purpose of the Amendments:
 The Fair Housing Amendments Act, like Section 504 of the Rehabilitation Act of 1973, as amended, is a clear pronouncement of a national commitment to end the unnecessary exclusion of persons with handicaps from the American mainstream. It repudiates the use of stereotypes and ignorance, and mandates that persons with handicaps be considered as individuals. Generalized perceptions about disabilities and unfounded speculations about threats to safety are specifically rejected as grounds to justify exclusion.
H.R. Rep. No. 711, 100th Cong.2d Sess.
By its terms the FHAA is made applicable to any recipient of federal funds. 42 U.S.C. § 3603. It defines handicapped person as one who has "a physical or mental impairment which substantially limits one or more of such person's life activities," or who has a "record of having such an impairment." 42 U.S.C. § 3602(A). The FHAA prohibits various types of discrimination including "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."42 U.S.C. § 3604.[1]
As the comments to the regulations implementing the FHAA note, "the concept of `reasonable accommodation' is also used in regulations and case law interpreting Sec. 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 804." 24 C.F.R. § 100-200 et. seq. Accordingly, the parties' urge, and the court agrees, that it is appropriate to look to caselaw interpreting Sec. 504 for the purpose of evaluating whether plaintiff failed to make reasonable accommodations within the meaning of the FHAA.
Sec. 504 provides:
 No otherwise qualified individual with handicaps in the United States, as defined in section 7(8) [29 USCS 706(8)], shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. CT Page 6328-G
Interpretation of 504 has required courts to consider "the extent to which a grantee is required to make reasonable modifications in its programs for the needs of the handicapped." Alexander v. Choate, 469 U.S. 296, 300, 105 S.Ct. 712, 719 n. 19 (1985).
"[A]n otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers . . . .To assure meaningful access, reasonable accommodation in the grantee's program or benefit may have to be made." Id., 301. The grantee need not make "fundamental" or "substantial" modifications to accommodate the handicapped, only "reasonable" ones. Southeastern Community College v. Davis, 442 U.S. 397,99 S.Ct. 2361, 60 L.Ed.2d 980 (1979).
"[N]o standard for determining the reasonableness of an accommodation has been formulated." Dexler v. Tisch,660 F. Sup. 1418, 1426 (D. Conn. 1987). Whether a landlord's proposed accommodation of a disability is "reasonable . . . is susceptible of precise measurement." City Wide Associates v. Penfield, 409 Mass. 140 144, 564 N.E.2d 1003, 1005 (Mass. 1991). Courts must balance the statutory rights of the handicapped to be integrated into society and the legitimate interests of federally assisted programs in preserving the integrity of the programs. Alexander v. Choate, supra, 300. Accommodations which impose "undue financial and administrative burdens" on the landlord; Rothschild v. Grottenhaler, 907 F.2d 286, 289 (2nd Cir. 1990); or which require "fundamental alterations in the nature of the program"; Southeastern Community College v. Davis, supra, 410; are not reasonable. See, also, School Board of Nassau County v. Arline, 480 U.S. 273, 94 L.Ed.2d 307, 197 S.Ct. 1123. The principal question is "whether reasonable accommodations will permit the handicapped to realize the principal benefits of the program." Majors v. Housing Authority of DeKalb, 652 F.2d 454,457 (5th Cir. 1931).
45 C.F.R. § 85.53 sets forth the requirement of reasonable accommodations with respect to Sec. 504:
 A recipient shall make reasonable accommodation to the known physical or mental limitations of an otherwise qualified handicapped applicant or employee unless the recipient can demonstrate that the accommodation would impose undue hardship on the operation of its program. CT Page 6328-H
45 C.F.R. § 85-53 further notes that "where reasonable accommodation does not overcome the effects of a person's handicap, or where reasonable accommodation causes undue hardship", it is not required. Id.
While the regulations implementing the FHAA merely restate the rule that "[i]t shall be unlawful for any person to refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a handicapped person equal opportunity to use and enjoy a dwelling unit;" 24 C.F.R. § 100.204; the illustrations following the general rule give some guidance as to what may be considered a "reasonable accommodation." Example (1) involves the case of a blind person's inability to obtain housing in a complex with a "no pets" policy due to his owning a seeing eye dog. Example (2) involves a man with mobility difficulties who could not rent an apartment in a particular housing complex because parking spaces were allocated on a first come first served basis. In both cases, the housing complex was in violation of the FHAA because of its refusal to accommodate the needs of the disabled tenant.
These examples illustrate the requirement that the accommodations be necessary to allow the handicapped person to use and enjoy the dwelling. The need for the accommodation must arise out of the person's handicap and not be a function of personal preference or convenience.
In this case the defendant argues that the plaintiff could reasonably accommodate him and his dog by either waiving the provisions of its pet policy or permitting the defendant to build a fenced in area for the dog in the rear of the defendant's apartment. In support of his argument defendant relies on Whittier Terrace Associates v. New Hampshire, supra, and Majors v. Housing Authority of DeKalb, supra. In both cases the tenants were mentally disabled and psychologically dependent on the companionship of their cat and dog, respectively. Both resided in apartments which had no-pet policies, but which also received federal financial assistance, thereby implicating Sec. 504, and the FHAA.
In Whittier, the court found that "there were no reasons (noises, odors, etc.) for the eviction of the plaintiff beyond the simple fact of the possession of the cat in violation of the rule." The CT Page 6328-I court noted that "[e]xcept for this violation, the defendant is an ideal tenant" and that "a narrow exception to the no-pet rule, involving no untoward collateral consequences, will enable a handicapped person to continue to function successfully on her own." 532 N.E.2d at 713. Likewise, in Majors, the court ruled that it "must recognize as reasonable the inference that the Housing Authority could readily accommodate Ms. Majors. Even if the "no pet" rule is itself imminently (sic) reasonable, nothing in the record rebuts the reasonable inference that the Authority could easily make a limited exception for that narrow group of persons who are handicapped and whose handicap requires (as has been stipulated) companionship of a dog." 652 F.2d 458.
The distinguishing factor in the instant case is the overwhelming evidence that the plaintiff seeks to evict the defendant not because he possesses a dog, but because of the defendant's demonstrated inability to comply with the plaintiff's pet policy.[2]
The record discloses that the defendant's dog causes noises and odors that are disruptive and offensive to other residents of the apartment complex. Because of the dog's toileting habits and the defendant's inability to adequately control him, the residents' health, safety and comfort is at risk. This then, is not a case which there are "no collateral consequences"; Whittier Terrace Associates v. Hampshire, supra to a modification of plaintiff's pet policy or in which the plaintiff "Could readily accommodate" the defendant; Majors v. Housing Authority of DeKalb, supra, 458; without reference to the effect such accommodations would have on the other residents. The record in this case demonstrates that the plaintiff has made reasonable efforts to accommodate the defendant and his dog. It arranged for a dog trainer to assist the defendant; purchased a "pooper-scooper", collar and lead for the dog; and offered to provide additional support for the defendant, which he declined. Additionally, notwithstanding its pet policy, it agreed to designate areas in which the dog could be walked and toileted. These efforts constituted reasonable accommodations by the plaintiff. Because of his severe disability and his marginal ability to live independently, the defendant has been unable to take advantage of these opportunities. That failure, however, does not make the plaintiff's accommodations unreasonable.
As the court noted in Majors v. Housing Authority of DeKalb, supra, "one must consider the necessary limitations imposed by the handicap itself in determining. . . whether reasonable accommodations will permit the handicapped person to realize the principle benefits of the program." Id. at 47. Whittier Terrace Associates v. Hampshire, CT Page 6328-J supra, at 712, quoting Rhode Island Handicapped Action Comm. v. Rhode Island Pub. Transit Authority, 549 F. Sup. 592, 607 (D.R.I. 1982). In this case I conclude that the plaintiff has made reasonable efforts to accommodate the defendant and his dog as required by the Fair Housing Amendments Act.[3] Sadly, defendant's disability is of such a nature that those efforts, though reasonable, are insufficient to abate the problems complained of in plaintiff's affidavit of noncompliance. Under the circumstances, there will be a final stay of execution through July 31, 1993.