MARK RAKUZ *vs.* SHEPARD SPUNT, trustee.[1]

No. 94-P-227.

Norfolk. February 6, 1995. - August 24, 1995.

Present: SMITH, JACOBS, & IRELAND, JJ.

*Fair Housing Act. Handicapped Persons. Housing. Landlord and Tenant,*
Parking. *Words*, "Reasonable accommodation."

Trustees of an apartment building who also owned and leased to the apart-
ment tenants spaces in an adjacent parking lot were entitled to termi-
nate the parking space lease of one of the tenants pursuant to the terms
of the lease and not for any reason related to the tenant's handicap, and
nothing in the Federal Fair Housing Amendments Act of 1988, 42
U.S.C. §§ 3601 et seq., required the trustees to continue to provide a
parking space where such accommodation would impose an undue
hardship on the trust. [175-177]

CIVIL ACTION commenced in the Superior Court Depart-
ment on November 27, 1991.

The case was heard by *Patrick F. Brady*, J.

*Herbert Lerman* for the defendant.

SMITH, J. On November 27, 1991, the plaintiff, Mark
Rakuz, a handicapped person, brought an action in the Supe-
rior Court in which he claimed that Dominion Trust (the
trust) had engaged "in a repeated pattern and practice of
discrimination against [him] on the basis of his handicap by
failing to reasonably accommodate his parking needs." In
particular, the trust had terminated his parking space lease.
He sought monetary damages and equitable relief under
G. L. c. 151B, § 9, G. L. c. 93, § 103, art. 114 of the
Amendments to the Massachusetts Constitution, and the
Federal Fair Housing Amendments Act of 1988, 42 U.S.C.
§§ 3601 et seq. (1988) (the FHAA). The trust counter-

---

[1]Of the Dominion Trust.

claimed seeking a declaratory judgment that the plaintiff was not entitled to park in the lot in question.

The matter was heard by a Superior Court judge, sitting without a jury. After the trial, the judge filed a memorandum of decision containing his findings of fact, rulings of law, and order for judgment. The judge's findings of fact were based on a joint stipulation, documentary evidence, and testimony of the parties. We summarize the judge's findings.

The trust owns a three-unit apartment building located at 120 Brook Street, Brookline. It also owns a parking lot in an adjacent lot at 124 Brook Street. In addition to being a trustee of the trust, Spunt is the property manager of the apartment building and the parking lot. The parking lot is licensed by the Brookline board of selectmen as an open air parking lot, and spaces in it are made available to tenants of the trust as well as to members of the public who are not tenants. The parking lot is not subject to rent control. The plaintiff's parking space lease is self-renewing each year from September 1 to August 31 and may be terminated by either the lessor or lessee, provided written notice is given before June 1. The rent for the parking space is separate from the rent for the apartment.

The lot has six spaces designated "A" through "F." Three of the spaces are directly behind the other three spaces. Because of the configuration, cooperation among the lessees of the spaces is necessary. In that regard, the lease provides, among other things, that lessees give their car keys to the people who are assigned the corresponding spaces so that cars can be moved about as necessary.

Since 1976, the plaintiff has resided in a rent controlled apartment in the building owned by the trust at 120 Brook Street. In 1976, the plaintiff's left leg was amputated because of circulation problems. He uses a leg prosthesis. He also had surgery on his right leg in 1981. He has difficulty walking and is unable to operate an automobile with a standard shift.

From the time that the plaintiff first began to park in the lot he was assigned to space "B," an interior space. From

time to time, however, the plaintiff has arranged with the person assigned the outside space "E" to switch in order that the plaintiff could occupy the outside space.

The judge found that there have been many conflicts over the years between the plaintiff and the other persons who have rented parking spaces. We quote from the judge's findings:

> "Many tenants have complained to . . . Spunt about [the] plaintiff's behavior, indicating that he has not been cooperative, that he blocks multiple spaces with his car, and that he has been abusive and threatening. Some of these complaints were in writing . . . ; many were oral. There was testimony from a former tenant . . . which I find [to be] credible, that on two occasions the plaintiff refused to move his car, or allow [the tenant] to move his car, so that [the tenant] could park in the inside space. On one occasion, in December, 1987, plaintiff's obstinacy prevented [the tenant] from parking in the inside space, with the result that he was ticketed by the Brookline police for parking on the street that evening. [Spunt] would often be called into these disputes by tenants to mediate. Sometimes [the] plaintiff would cooperate and move his car; at other times he would not."

By letter, dated January 18, 1988, Spunt indicated that, in accordance with the provisions of the lease, the plaintiff's vehicle would be towed if he continued to block space "E" by failing to move all the way into space "B." (The threat was never carried out). The letter went on to suggest that the plaintiff could rent space in another lot.

By letter, dated May 25, 1990, Spunt gave notice of the trust's intent to terminate the parking space lease with the plaintiff when it expired on August 31, 1990. The plaintiff's lease of his apartment was not affected by the termination of his parking space lease. The plaintiff's action followed the termination of his parking space lease.

The judge ruled that (1) the plaintiff could not prevail under G. L. c. 151B because he had failed to exhaust his administrative remedies; (2) the plaintiff had no remedy under G. L. c. 93, § 103, the Massachusetts Equal Rights Act, because c. 151B was the exclusive remedy under the Act and because the effective date of the Act was after the alleged violation; and (3) the plaintiff had no cause of action under art. 114 of the Amendments to the Massachusetts Constitution.

The judge then considered whether the termination of the parking space lease was a violation of the FHAA. A parking lot is not a dwelling under the description of "dwelling" in § 3602(b) of the FHAA.[2] Under 42 U.S.C. § 3604(f) (2), however, it is unlawful to discriminate against a handicapped person in regard to the providing of services or facilities in connection with the rental of a dwelling. The judge ruled that space in the parking lot was a "service" in connection with the rental of the plaintiff's apartment, and, therefore, the FHAA applied to the matter.

Under § 3604(f) (3) of the FHAA, discrimination against a handicapped person includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling . . . ."[3] It was the plaintiff's theory that the defendants discriminated against him because, by terminating the parking space lease, they refused to make reasonable accommodations in regard to his parking needs, with the result that they did not "afford [him] equal opportunity to use and enjoy his apartment . . . ."[4]

---

[2]Section 3602(b) states that " 'Dwelling' means any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure, or portion thereof."

[3]Similar language appears in G. L. c. 151B, § 4(7A)(2).

[4]The plaintiff also claimed that the defendants were attempting to force him to leave his rent controlled apartment (after which the building will no longer be subject to rent control) by denying him convenient parking. The judge specifically rejected that claim.

The judge ruled that, because parking was a service in connection with the rental of the plaintiff's apartment, the trust was obligated to make reasonable accommodations with respect to the plaintiff's parking needs. Addressing the issue whether the trust had refused to make such accommodations, the judge specifically rejected the plaintiff's claim that the failure to assign the plaintiff an outside space (when a tenant with a standard transmission was assigned the space behind him) was a refusal to make reasonable accommodations. The judge then considered whether the termination of the parking space lease amounted to a refusal reasonably to accommodate the plaintiff's parking needs.

On that matter, the judge specifically accepted "Spunt's testimony that [the] plaintiff has been a very difficult tenant with respect to the subject of parking. In some instances he has been uncooperative, rude and abusive to other tenants using the lot." The judge ruled, however, "nothing [that] the plaintiff has done would warrant a termination of his parking privileges. Continuation of the plaintiff's right to park in the lot would, perhaps, constitute an aggravation to the [trust], but would not amount to an undue hardship."[5] The judge then concluded that the trust by terminating the plaintiff's lease had not reasonably accommodated the plaintiff's parking needs. Judgment entered in favor of the plaintiff, ordering the trust "to make a parking space available to the plaintiff at the parking lot located at 124 Brook Street . . . under the same terms and conditions as spaces in that lot are made available to other parking tenants."

On appeal, the trust argues that (1) the parking lot is not a service or facility in connection with housing and thus does not come within the jurisdiction of the FHAA; (2) the judge erred because he ordered the trust to allow the plaintiff to keep his parking space even though the judge found no dis-

---

[5]The judge found that there were at least two parking lots within several hundred yards of the plaintiff's dwelling that "could possibly provide alternative arrangements for the plaintiff." However, the judge noted that the evidence was not sufficient for a finding that spaces were actually available for the plaintiff in those lots.

criminatory motive or purpose behind the termination of the lease; and (3) the judge erred in ruling that the termination of the lease was an unlawful act because the lease was terminated for conduct unrelated to the plaintiff's handicap.[6]

We assume, without deciding, that space in the parking lot was a service in connection with the plaintiff's apartment and, therefore, the FHAA applied to this matter. Compare *Shapiro* v. *Cadman Towers, Inc.*, 844 F. Supp. 116, 123 (E.D.N.Y. 1994) (there was not much question that indoor parking was part of cooperative housing corporation's "services and facilities" provided in connection with dwelling of handicapped tenant; building management conceded that they made no attempt at accommodation). See also 24 C.F.R. § 100.204(b), example 2 (1994).

"A 'reasonable accommodation' is one which would not impose an undue hardship or burden on the entity making the accommodation." *Peabody Properties, Inc.* v. *Sherman*, 418 Mass. 603, 608 (1994). The judge had made several specific findings concerning the plaintiff's "uncooperative, rude and abusive" conduct to Spunt and to other tenants of the parking lot. There is nothing in the record to indicate that the trust's conduct was related in any way to the plaintiff's handicap, i.e., that the termination of the parking lease was motivated by discriminatory intent. In addition, because of the configuration of the parking lot, cooperation among the lessees of the spaces was necessary and it was so stated in the plaintiff's parking space lease. We do not perceive anything in the FHAA that mandates that the trust in these circumstances must continue to provide a parking space to this plaintiff. The trustee has reasonably accommodated the plaintiff and has afforded him the "equal opportunity to use and enjoy [his apartment]," satisfying the requirements of the FHAA. Based on the judge's findings with regard to the

---

[6]The plaintiff filed a cross appeal but never filed a brief. See Mass.R.A.P. 16(i), 365 Mass. 863 (1974), which states that, if a cross appeal is filed, "the brief [of the party filing the cross appeal] shall contain the issues and argument involved in his appeal as well as the answer to the brief of the appellant." Because the plaintiff did not brief any of the issues raised, we deem them to be waived.

plaintiff's conduct for several years, an order that the trust must continue to provide a parking space for the plaintiff would impose an undue hardship on the trust.[7]

The judgment is vacated, and a new judgment shall enter in favor of the trustee, declaring that the trust is not required to provide a parking space for the plaintiff.

*So ordered.*

---

[7]Example 1 of 24 C.F.R. § 100.204 (1994) indicates that it is a violation of the reasonable accommodation rule for a landlord with a no pets policy to refuse to allow a blind tenant's seeing eye dog to live with the tenant. We question, however, whether the landlord must continue to tolerate a situation where the seeing eye dog bites the other tenants.