Coven, J.
This is a summary process action to evict a disabled tenant from federally subsidized housing. Judgment for possession was entered in favor of the plaintiff, and the defendant-tenant filed this Dist./Mun. Cts. R. A D. A., Rule 8C appeal.
Defendant Sandra McLaughlin resides at the Cobble Hill Apartments in Somer-ville, a complex consisting of four buildings with a total of 224 residential units. All apartments in three of the buildings are rented exclusively to elderly or disabled tenants. The fourth building provides housing for low and moderate income families. Federal rental assistance is received for all units pursuant to Section 8 of the U.S. Housing Act, 42 U.S.C. §1437f.
In January, 1991, the defendant became a Cobble Hill tenant. She was qualified as a disabled person based on her debilitating migraine headaches, and was assigned a one-bedroom apartment. The record indicates that the defendant also suffers from asthmatic bronchitis, hypotension, and vertigo, as well as both post-traumatic stress disorder and depression resulting from a violent sexual assault. She has undergone numerous psychiatric commitments. In March, 1997, the defendant was reassigned to a two bedroom apartment to accommodate her need to have live-in assistance on those occasions when the severity of her migraines incapacitates her. The defendant’s move to the second apartment was delayed by a psychiatric hospitalization.
In November, 1997, the plaintiff management company began to receive complaints from the tenant living in the apartment directly below the defendant’s, one Lillian DiFraia (“DiFraia”), about excessive noise from the defendant’s television and stereo. Both the plaintiff’s security personnel and the Somerville Police Department were called upon to respond to DiFraia’s numerous noise complaints from mid-November through the end of December, 1997.[2]
*167 On January 12,1998, the plaintiff served the defendant with a Notice to Quit to terminate her tenancy. As grounds therefor, the Notice listed the complaints against the defendant about noise, her destruction of Christmas decorations,[3] and her repeated and trivial telephone complaints and requests to the management office which were deemed burdensome by some employees.
On February 6,1998, the plaintiff filed an action in the Superior Court to obtain not only an injunction restraining the defendant from disturbing other tenants and management, but also an order committing the defendant to a mental health facility pursuant to G.L.c. 123. The complaint listed the same noise complaints, unreasonable requests to management and destruction of Christmas decorations outlined in the Notice to Quit. The complaint also alleged that the defendant “displayed bizarre behavior which is indicative of a mental disorder.” Supporting affidavits attesting to the defendant’s apparent mental instability were submitted by employees of the plaintiff. The Superior Court action remained pending at the time of the trial of this case.
On March 16,1998, the plaintiff commenced this summary process action. By way of affirmative defense, the defendant alleged, inter alia, that the plaintiffs attempt to evict her from federally subsidized housing without first attempting reasonable accommodations with respect to her disabilities constituted discrimination against a handicapped person in violation of the Fair Housing Act, 42 U.S.C. §3604, the 1973 Rehabilitation Act, 29 U.S.C. §794, and Massachusetts civil rights laws, G.L.c. 151B, §4(7). Following the entry of judgment for the plaintiff, the defendant brought this appeal on a charge of error in the denial of a number of her requests for rulings of law.
1. The trial judge determined, as a matter of fact and law, that the defendant is a “qualified” handicapped person entitled to the protections of state and federal disability, public housing and civil rights statutes.[4] The judge’s allowance of defendant’s request number C-12 also constituted a finding that the defendant suffered from a mental, as well as a physical, disability. The parties’ stipulations as to the defendant’s numerous, and often involuntary, psychiatric commitments in recent *168 years, as well as other evidence adduced at trial, amply supported the court’s finding of the defendant’s mental disability. Such finding is entitled to the customary deference on this appeal. Starr v. Fordham, 420 Mass. 178, 186 (1995); Mark Moore Homes, Inc. v. Tarvezian, 1998 Mass. App. Div. 171, 173.
As a mentally and physically disabled person, the defendant is protected by federal and state law in her rental of a federally subsidized apartment from any discrimination against her based on her handicaps. Peabody Properties, Inc. v. Sherman, 418 Mass. 603, 605 (1994). Under the Fair Housing Act, discrimination includes a landlord’s “refusal to make reasonable accommodation in rules, policies, practices or services, when such accommodations may be necessary to afford [the handicapped] person equal opportunity to use and enjoy a dwelling.” 42 U.S.C. §3604(f) (3) (B). A “reasonable accommodation” is an adjustment of programs or services which can be made by the landlord or other recipient of Federal funds “without undue financial or administrative burdens.” City Wide Assoc. v. Penfield, 409 Mass. 140, 142 (1991). The mandate for reasonable, but not onerous, accommodations strikes “a balance between the statutory rights of the handicapped ... and the legitimate interests of federal grantees” in preserving their programs and facilities. Id. Thus while the plaintiff “need not be required to make ‘fundamental’ or ‘substantial’ modifications to accommodate the handicapped, it may be required to make reasonable ones.” Id.
2. Unlawful discrimination based on a tenant’s disability is an affirmative defense in an eviction action for which the defendant bears the initial burden of advancing a prima facie case. Id. at 143. There is evidence in the record herein that the plaintiff’s termination of the defendant’s tenancy and its filing of this eviction action were in direct response to conduct of the defendant’s which resulted from her mental disability.[5] Compare Rakuz v. Spunt, 39 Mass. App. Ct. 171, 176 (1995).
The causal connection between the defendant’s mental health problems and her disruptive actions was in fact repeatedly recognized by the plaintiff itself. There was evidence, for example, that in response to the Christmas decoration incident, the plaintiff had the defendant taken into police custody and involuntarily committed in a hospital psychiatric unit. Further, in an affidavit submitted in the plaintiff’s Superior Court action, an employee described a meeting called to address the DiFraia noise complaints during which the defendant “was crying intermittently and speaking nonsensically.” The employee’s response was to offer to assist the defendant “in addressing mental health concerns, specifically, depression.” Finally, on the basis of the conduct alleged by the plaintiff as grounds for eviction, the plaintiff petitioned the Superior Court “to order the commitment of said defendant because of danger to herself or others pursuant to Mass. Gen. L. c. *169 123.” The plaintiff was at all times aware of the defendant’s numerous psychiatric hospitalizations.
The record further establishes that despite its obvious knowledge of the defendant’s increasing mental health problems and deteriorating behavior, the plaintiff confined its accommodation efforts to two meetings between the defendant and a management employee to review the DiFraia noise complaints, and one offer to supply headphones for the television set.
3. This evidence was sufficient to shift to the plaintiff/landlord the burden of production to prove that the eviction of the defendant was not discriminatory because sufficient, reasonable accommodations were attempted prior to the Notice to Quit. City Wide Assoc. v. Penfield, supra at 143.
The dispositive question was the extent to which the plaintiff was obligated to make reasonable adjustments in its tenant services and property management to accommodate the needs of the mentally disabled defendant prior to the termination of her tenancy and the institution of eviction proceedings. Id. at 144. In evaluating the accommodation efforts of the plaintiff, the trial court was obligated to balance
the overall costs and benefits.... If the overall costs [were] reasonable in light of the anticipated benefits, and the burdens imposed [were] not ‘undue,’ then it can be reasonably concluded that the handicapped have suffered discrimination solely by reason of their handicap....
Whittier Terrace Assoc. v. Hampshire, 26 Mass. App. Ct. 1020 (1989).
The plaintiff’s property manager testified that the defendant’s accommodation request to be transferred to the “family” building, away from the sole tenant registering complaints against her, was denied. The employee stated that such a transfer would have been “too burdensome in light of what happened with the [defendant’s] first apartment transfer” and that there were other people “with extreme medical disabilities” already waiting for transfer. Even assuming arguendo that the grounds for rejecting this possible accommodation were both legally sufficient and credible, the plaintiff’s obligation to attempt a reasonable accommodation did not end there. The fact that a tenant does not request a specific or suitable accommodation does not relieve a landlord from making one, particularly when the tenant is handicapped by a mental disability. See Bultemyer v. Fort Wayne Community Schools, 100 F.3d 1281, 1284 (7th Cir. 1996).
In allowing defendant’s request for ruling number C-19, the trial judge in fact acknowledged the reasonableness of other potential accommodations.[6] The plaintiff failed, however, to satisfy its burden of producing some evidence that it even *170 considered, much less attempted, either one or more of the reasonable accommodations outlined in request C-19, or other approaches prior to eviction, such as asking the defendant to return to a one-bedroom unit in a different part of the complex, or staying any eviction pending an agreement to secure mental health assistance. Other than the two brief “noise” meetings and the earphones, all the plaintiff could offer at trial on the subject of accommodations was what it never thought to consider; namely, a probationary lease, a postponement pending psychiatric treatment or merely a drop-ceiling to reduce sound in the DiFraia apartment.
On this state of the evidence, it is clear that the plaintiff failed to sustain its burden of demonstrating that it endeavored to make individualized adjustments to accommodate the defendant’s mental disability prior to eviction. Given the court’s judgment for the plaintiff despite the absence of any indication of attempted reasonable accommodations by it, the trial court could not have satisfactorily engaged in the practical balancing of competing interests mandated by state and federal law to prevent discrimination against a tenant suffering from a mental disability. See Simring, The Impact of Federal Anti-Discrimination Laws On Housing For People With Mental Disabilities, 59 George Wash. L. Rev. 413 (1991).
Accordingly, the trial court’s judgment in the plaintiff’s favor for possession is vacated. The case is returned to the Somerville Division for a partial new trial on the single question of whether the plaintiff satisfied its obligation, prior to terminating the defendant’s tenancy, to make reasonable accommodations with respect to the defendant’s mental disability.
So ordered.

 The plaintiff alleged that the volume of the defendant’s television was loud on fourteen different occasions between November 11 and December 27,1997. The precise number of incidents was, however, adequately contested at trial. There was testimony by both security personnel and police officers who responded to DiFraia’s complaints that on some occasions, the noise actually emanated from apartments other than the defendant’s; at other times, no noise was detected at all. In virtually every other instance in which any noise was caused by the defendant, she immediately responded to requests to lower the television volume. No tenant other than DiFraia either testified at trial or was ever listed as having made any complaints against the defendant regarding noise.

 There was evidence that the defendant was seen sitting under a table tearing up paper Christmas decorations which had been in the common areas before the holidays. However, there was also evidence that the decorations had been removed or damaged by visitors to the complex. In any event, the defendant was involuntarily hospitalized after the incident in the psychiatric unit of the Cambridge Hospital.

 Specifically, the trial judge allowed defendant’s requests for rulings of law numbers C-12 and C-16, which stated: “12. The defendant is a handicapped person within the meaning of 29 U.S.C. §706(7) (B), 42 U.S.C. §3602(h) and G.L.c. 151B, §1(17) and (19) because she has a record of a physical or mental impairment which substantially limits one or more of her major life activities, as evidenced by:
“ (a) her receipt of Supplemental Security Income (SSI);
“(b) her need for live-in help with activities of every day living;
“(c) her recent involuntary hospitalizations at Psychiatric Unit at Cambridge Hospital and the Lindeman Mental Health Center;
“(d) her history of post traumatic stress disorder and depression; and
“(e) her history of asthmatic bronchitis, hypotension, vertigo, weakness, severe migraine headaches and difficulty sleeping.
“16. In the alternative, the defendant is a qualified handicapped person pursuant to 24 C.F.R. §8.3,24 C.F.R. §100.202(c) (1) and G.L.c. 151B, §4(7A) (2) because she could meet the plaintiff’s essential eligibility requirements for occupancy, and because she could meet the requirements of a tenancy, with a reasonable accommodation or modification in the plaintiff’s rules, policies, practices or services.”

 Defendant’s request for ruling number C-15 states: ‘The plaintiffs are refusing to rent to the defendant, and are otherwise denying her the opportunity to use and enjoy her dwelling solely be reason of her disability, in violation of 24 C.F.R. §8.4(b) (1) (i), 42 U.S.C. §3604, 24 C.F.R. §100.70(b) and G.L.c. 151B, §4(7), and they may not recover possession of the premises.” The trial judge simply denied this request without further explanation. As is the case with most of what the defendant has labeled as requests for rulings of law, request C-15 impermissibly sought a mixed determination of fact and law. Thus the request could have been correctly denied by the court solely on the basis of its improper hybrid form. Liberatore v. Framingham, 315 Mass. 538, 543-544 (1944); Molloy v. Massachusetts Mortg. Corp., 1998 Mass. App. Div. 3, 5. For this reason, we do not construe the court’s denial of the request as a finding that the defendant’s objectionable conduct which led to the plaintiff's summary process filing was unrelated to her mental disability.

 Request number C-19, which was allowed by the court, stated (with citations omitted): “Examples of reasonable accommodations include, but are not limited to: (a) forbearing from eviction to allow a handicapped person to recover from an injury or illness, (b) forbearing from eviction to allow a handicapped person to seek and receive medical treatment; (c) utilizing program funds or security deposits to compensate for damage to a dwelling; (d) making a physical modification to publicly assisted housing at the expense of the owner to enable a handicapped person to continue in occupancy, such as installing sound-proofing or a drop ceiling to absorb sound; (e) modifying program or house rules to transfer a tenant to a dwelling where she can remain in occupancy in compliance with the essential requirements of a tenancy, or transferring a neighbor to another unit for the same purpose; and (f) modifying business practices by continuing a summary process action for a three to six month period, after which time the action would be dismissed if a tenant did not engage in disruptive behavior.”