NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1297

CHRISTOPHER DESIMONE

vs.

RYAN TARASUIK & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Ryan Tarasuik and Joanne Benard (tenants) appeal from a judgment of summary process entered on a jury verdict for Christopher DeSimone (landlord), awarding him possession of the tenants' rental unit and more than $40,000 in damages, interest, and costs.  The tenants claim that they were improperly barred from asserting any counterclaims and defenses, and that the landlord failed to prove that they received a legally effective notice to quit.  Because we agree that the tenants should have been allowed to raise at least the defense of retaliation, as

_____

[1] Joanne Benard.  In several filings, Joanne Benard's name is spelled "Joann Bernard."  As is our custom, we spell the tenant's name as it was spelled in the complaint.

well as counterclaims responsive to the landlord's request for back rent, we reverse.[2]

Background.  The tenants and landlord entered into a residential lease agreement for an apartment in Lynn on March 18, 2020.  In February 2021, the landlord confronted the tenants about keeping a dog at the apartment in violation of the lease agreement.  One of the tenants apologized and told the landlord that the dog would return to his parents' house.  Two months later, the tenants and landlord agreed to a one-year lease extension.  The landlord followed up with the tenants in June 2021, claiming that other tenants were complaining about the dog barking.  Later that year, the tenants sought injunctive relief against the landlord for failing to enforce the no-smoking restriction and failing to ensure their right to quiet enjoyment of the premises, and on November 22, 2021, a judge in the Housing Court issued an order requiring the landlord to, among other things, remind residents that smoking is not permitted on the premises and that animals were not allowed on the premises without approval.  The same day that order was entered, the landlord sent the tenants a notice of a lease violation stating that they had unauthorized pets on the premises.

_____

[2] We acknowledge the amici brief submitted by Springfield No One Leaves and the Massachusetts Fair Housing Center.  The plaintiff elected to not file a brief.

2

The tenants did not pay rent for December 2021.  On January 3, 2022, he served a notice to quit, citing nonpayment of two months' rent.  The landlord served another notice to quit on February 3, 2022, citing nonpayment of rent and a "[p]et [v]iolation."  On March 21, 2022, the landlord filed a summary process action against the tenants, seeking eviction and four months' rent.  The tenants answered, asserting counterclaims and defenses including retaliation, discrimination, failure to provide reasonable accommodation based on disability, breach of the implied warranty of habitability, breach of quiet enjoyment, and failure to properly terminate their tenancy.

On October 11, 2022, the tenants moved to dismiss the summary process action, claiming that they never received any of the notices to quit and that they reserved "their right to withhold rent on the basis [of] multiple sanitary and health violations."  The motion judge denied the tenants' motion. Prior to trial in April 2023, the landlord moved to dismiss the tenants' counterclaims.

At the start of trial, the trial judge stated that although "this case was cataloged as a nonpayment of rent case," he considered it to be "a cause case."  The landlord's counsel informed the judge that nonpayment of rent was "what we're going for," but the judge stated that the "January 3, 2022 notice to quit for nonpayment of rent" was "superseded" by the February 3,

3

2022 notice, which "seems to be for cause. Pet violation, it says." The judge ruled that the landlord could seek nonpayment of rent as damages. He also ruled that because "the termination was for cause," the tenants could not present counterclaims, stating that G. L. c. 239, § 8A, "compels me to rule that." In response to the trial judge's rulings, the tenants argued that they had a retaliation claim against the landlord as well as other counterclaims and affirmative defenses, but the judge ruled that only defenses "against the so-called pet violation and any amounts that are owed for rent" were allowed and that "any conditions [of the apartment] really doesn't come into this case."

During the trial, the judge precluded the tenants from referring to or presenting evidence on the apartment's conditions and the issue of retaliation. The landlord testified that the tenants had not paid rent for almost eighteen months, which caused him and his family "significant hardship." One of the tenants testified that even though they "didn't have the funds to pay" the rent in March 2022, they attempted to pay using RAFT rental assistance funds, but the landlord rejected it. The jury returned a verdict for the landlord, awarding him $35,700 in damages and possession of the apartment.

Discussion. 1. The tenants' counterclaims and affirmative defenses. The tenants argue that the trial judge erred in

4

prohibiting the tenants from raising any defenses or counterclaims at trial. We agree.

It is not clear from the record why the judge decided to treat the case as solely a fault case. The bases for an eviction action are those "provided in the notice to quit." Adjartey v. Central Div. of the Hous. Court Dep't, 481 Mass. 830, 852 (2019). The landlord's January 2022 notice to quit cited nonpayment of rent as the only reason for eviction, while the February 2022 notice cited both nonpayment of rent and the pet violation. The parties intended to try the case as one for nonpayment of rent; as the landlord's counsel explained at the start of trial, "nonpayment is . . . what we're going for." The judge then ruled that even though "the cause is a pet violation," the jury could still award nonpayment of rent and "other damages" if the landlord proved the violation. The landlord testified about the tenants' nonpayment of rent and the hardship it caused him and his family, and in closing his counsel argued that the landlord had lost "a heck of a lot of money, over [thirty] grand, . . . close to [forty]." The jury awarded the landlord $35,700, an amount commensurate to the landlord's claim for unpaid rent.

Contrary to the judge's explanation, G. L. c. 239, § 8A, does not prohibit the tenants from raising counterclaims or defenses at trial. The statute authorizes a tenant to raise a

defense to possession, along with certain counterclaims relating to the tenancy, when the landlord brings a summary process action "pursuant to a notice to quit for nonpayment of rent, or where the tenancy has been terminated without fault of the tenant." G. L. c. 239, § 8A. Although § 8A does not apply when an eviction is based solely on the fault of the tenant, see Spence v. O'Brien, 15 Mass. App. Ct. 489, 499 (1983), the record establishes that the landlord brought this action pursuant to a notice to quit for, among other reasons, nonpayment of rent. Accordingly, the judge should have allowed the tenants to raise, at a minimum, counterclaims aimed at offsetting the rent sought by the landlord. See Davis v. Comerford, 483 Mass. 164, 173 (2019); Boston Hous. Auth. v. Hemingway, 363 Mass. 184, 202-203 (1973).

Furthermore, even if the landlord had sought eviction solely based on alleged fault of the tenant, nothing in G. L. c. 239, § 8A, prohibits a tenant from asserting other applicable statutory or common-law defenses. As the Supreme Judicial Court has explained, § 8A "is not the exclusive authority for defenses and counterclaims in summary process." Bank of Am., N.A. v. Rosa, 466 Mass. 613, 621 (2013). See Youghal, LLC v. Entwistle, 484 Mass. 1019, 1023-1024 (2020) (retaliation defense allowed regardless of basis for eviction); City Wide Assocs. v. Penfield, 409 Mass. 140, 143 (1991) (tenant allowed to raise

6

reasonable accommodation defense in fault-based eviction).

Here, the tenants asserted in their answer certain defenses and counterclaims that were available irrespective of § 8A. For example, the tenants asserted a retaliation defense pursuant to G. L. c. 239, § 2A, based on the fact that the landlord issued a notice of a lease violation on the same date they obtained an injunction requiring him to enforce the building's no-smoking restriction and restriction on pets.[3] In the circumstances, it was error for the judge to rule that "the defense of retaliation isn't available" because of § 8A.

2. The February 2022 notice to quit. The tenants also contend that the judge erred in relying on the February 3, 2022 notice to quit as the operative notice for the landlord's summary process action.[4] We agree. A landlord may not file a

_____

[3] "It shall be a defense to an action for summary process that such action or the preceding action of terminating the tenant's tenancy, was taken against the tenant for the tenant's act of commencing, proceeding with, or obtaining relief in any judicial or administrative action the purpose of which action was to obtain damages under or otherwise enforce, any federal, state or local law, regulation, by-law or ordinance, which has as its objective the regulation of residential premises . . . . The commencement of such action against a tenant, or the sending of a notice to quit upon which the summary process action is based . . . within six months after the tenant has commenced, proceeded with or obtained relief in such action . . . shall create a rebuttable presumption that such summary process action is a reprisal against the tenant for engaging in such activities. . . ." G. L. c. 239, § 2A.

[4] The tenants raise other concerns regarding the February notice to quit, including claims that the tenants never received

7

summary process complaint before the termination date outlined in the notice to quit.  Youghal, 484 Mass. at 1022.  As stated in the February notice, the landlord could not begin a summary process action against the tenant until "the end of the next rental period beginning after [the tenants'] receipt of this notice."  The notice stated that the landlord served it on February 3, 2022.  The next rental period started on March 1, 2022.  Accordingly, the landlord could not bring a summary process action against the tenants based on the February notice until April 1, 2022, at the earliest, the day after the end of the March rental period.  Because the landlord filed the summary process action prematurely, on March 21, 2022, it was error to

---

the notice and that the landlord did not serve an "unambiguous, legally effective" notice.  Because we find that the judge erred in relying on the February notice to quit due to the landlord's premature filing of the summary process action, we need not address these claims.  We note, however, that a landlord's termination notice must be unequivocal, see Maguire v. Haddad, 325 Mass. 590, 593 (1950), and that multiple notices with different termination dates are not unequivocal and may warrant dismissal of a summary process action.

8

rely on the February notice as the basis for the summary process action.

Judgment reversed.

By the Court (Neyman, Singh & Toone, JJ.[5]),

Clerk

Entered: January 17, 2025.

---

[5] The panelists are listed in order of seniority.