liMARVIN, Chief Judge.
In this action by a tenant against her landlord arising out of the tenant’s fall on the stairs leading to her second floor unit that occurred 22 months after she informed the apartment manager that she desired a first floor apartment, the tenant, Annie Mae Riser, appeals a judgment rejecting her demands after a jury trial.
Riser’s action against her landlord, H.Y. Bell Memorial Apartments, is founded in tort as the landlord’s alleged breach of duty under the Fair Housing Act which protects handicapped persons against discrimination. The jury found Riser was not a handicapped person.
Finding no tort or discrimination, we affirm.
FACTS
Riser, aged 65 and weighing more than 200 pounds at the time of the accident, had been afflicted with phlebitis and abnormal swelling in her right leg and crippling arthritis in her knees more than a decade. Willie Holden, the husband of Riser’s niece, was the manager for the Bell apartments and another housing complex, the Johnson Estates. Holden informed Riser in 1987 that a one-bedroom was available in the Bell Apartments. Riser then moved from her rural abode into a one- *691 bedroom second floor apartment. When Riser moved in, she thought the upstairs apartment would be “safer” than a downstairs unit.
Riser’s rent was paid under the Section 8 Housing Program. HUD subsidizes rent for Riser and other persons of low income. HUD determines what size apartment it will subsidize for an individual or family. Generally, ha single person is entitled to a one-bedroom apartment. However, one person may qualify for a two-bedroom unit if that person’s physical condition requires either medical equipment to be placed in the home, or a live-in care-giver. Riser did not “qualify” under either of these exceptions for a two-bedroom unit.
Riser requested a downstairs apartment September 28, 1989, from Holden. He suggested it would be easier to get her into one of the two downstairs one-bedroom units if she would bring him a doctor’s note. Riser hand-delivered a note from Dr. Harry Winters the following day, which stated she had “crippling arthritis and right leg chronic phlebitis. She needs [to] be in downstairs apt.” Holden believed this note was simply written at his request, that it was not ambiguous, and he had no reason to call Dr. Winters for clarification or further information. Holden explained he saw no allegation of handicap in the note to cause him to investigate.
A one-bedroom apartment was not available on the first floor when Riser made her request to Holden, who told her that as soon as one became available, she would get it. Holden testified he also looked for a first floor one-bedroom unit for Riser in the Johnson Estates. Riser never again mentioned to Holden her request to move downstairs.
July 23, 1991, Riser fell as she was going down the steps from her apartment. She fractured two bones in her left (“good”) ankle and was hospitalized for several days.
laDr. Winters testified he began treating Riser in 1975. Her physical ailments included obesity, phlebitis, chronic joint pains, general arthritic condition, low back pain and knee pain. At the time of her fall, she was taking at least five medications which could cause dizziness or fainting. Dr. Winters said he wrote the note to Holden at Riser’s request. He agreed with her that because of the phlebitis and arthritis it would be better for her to be in a downstairs apartment. However, he believed she could do laundry, carrying it up and down the stairs, that she could do her own cooking and clean her apartment.
Several relatives of Riser testified that although they knew Riser had “health” problems, they did not think of her as handicapped before the fall. She did her own laundry, her own cooking, her own house work, her own grocery shopping. She attended church and visited the Winn Council on Aging. The relatives thought Riser did everything she wanted to do.
Being married to Riser’s niece, Holden often saw Riser and was generally familiar with her physical condition. He did not know all of Riser’s specific physical problems until he heard Dr. Winters’ testimony. He did not consider Riser handicapped, having seen her activities. Holden said he did not discriminate against her in any way, even if he had considered her as handicapped.
On the verdict form were 11 questions. The jury answered only the first. We reproduce the first three of the jury interrogatories:
1. Was Annie Mae Riser handicapped within the meaning of the Fair Housing Act?
UYes_
NoX
If you answer “no”, your deliberations are ended— If ... “yes”, proceed to question “2”.
2. Do you find that the actions or omission of H.Y. Bell Memorial Apartments a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations were necessary to afford Annie Mae Riser equal opportunity to use and enjoy the dwelling?
Yes_
No
*692 If ... “no”, your deliberations are end-ed_ If ... “yes”, proceed to answer question “3”.
3. Was H.Y. Bell Memorial Apartments negligent?
Yes_
No_
Riser’s attorney wanted the question of handicap to be answered first, admitting that if the jury found no handicap, it would end further inquiry and answers.
DISCUSSION
On appeal, Riser acknowledges that her claim for damages is in tort under LCC 2315 and for discriminating against her or breaching a duty to her, as a handicapped person, under the Fair Housing Act. She does not suggest the stairs on which she fell were defective or posed an unreasonable risk of harm.
Article 2315
Riser cannot recover under LCC 2315 because there was no allegation or evidence of an act or omission attributable to Bell which was a cause in fact of her injury independent of the discrimination claim. Bell could not move Riser downstairs because no one-bedroom apartments were available. | sRiser was not entitled under HUD regulations to a larger unit. Riser’s counsel effectively acknowledged at oral argument that he did not believe Riser could recover under LCC 2315 independent of the discrimination claim.
Fair Housing Act
The Fair Housing Act protects handicapped tenants against discrimination because of a handicap. The Act states in pertinent part:
[I]t shall be unlawful ... [t]o discriminate against any person in the terms, conditions, or privileges of ... rental of a dwelling, or in the provision of services or facilities in connection -with such dwelling, because of a handicap of ... that person[.]
42 U.S.C.A. 3604(f)(2)(A). Our emphasis.
[Discrimination includes ... a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling^]
42 U.S.C.A. 3604(f)(3)(B)
The initial inquiry is whether Riser is handicapped within the meaning of the statute. A person is handicapped for purposes of the Fair Housing Act if that person has a physical or mental impairment which substantially limits one or more of her major life activities. 42 U.S.C.A. 3602(h)(1).
Riser testified she did her own cooking, cleaning and laundry. She went to church, to the Winn Council on Aging, and to the grocery store. Although she stated she did not leave her apartment some days for fear of the stairs, she admitted she was more active and mobile in the apartment than she was before moving to town. None of her witnesses considered her |6handicapped. There is no evidence to indicate that Riser’s physical condition limited her in any way from the above recited activities she routinely followed at age 65.
Riser argues that she is disabled according to the Social Security Administration because she is unable to work, and that should be legally sufficient to establish that she is handicapped under the Fair Housing Act. Having sued under the Fair Housing Act, she had the burden of showing that she was handicapped by a physical impairment from exercising her major activities. We cannot find the jury was clearly wrong in answering the one interrogatory that Riser was not handicapped. See the above quotes from the statute.
Even should we assume arguendo that Riser was handicapped, the record must further show that she was discriminated against because of her handicap in order to recover under the Fair Housing Act. Holden, as manager of the Bell Apartments, was the agent through whom Bell acted toward Bell’s tenants. He testified that he did not discriminate against her on any basis. Riser testified that she considered Holden a friend, that he had nothing against her, and that he and his wife always tried to help her.
*693 Holden stated he did not consider Riser handicapped because of the routine activities he observed her doing. Holden did not know the extent of her physical problems until he heard Dr. Winters testify. Without knowledge of Riser’s medical condition, Holden was not required to assume Riser was handicapped, as we have done arguendo. In any event, Riser has Lnot shown on this record that Holden discriminated against her because of her condition.
DECREE
At appellant’s cost, the judgment of the trial court is AFFIRMED.