TERRI F. LOVE, Judge.
| jThis appeal arises from Marie Robinson’s eviction from River Garden Apartments. The trial court found that Ms. Robinson violated her lease and gave her twenty-four hours to vacate. Ms. Robinson alleged that the trial court’s denial of her exception of prematurity and exception to vagueness are reversible error. Ms. Robinson also argues that River Garden Apartments did not have sufficient evidence from which a trier of fact could reasonably conclude that Ms. Robinson, her household, or her guests engaged in criminal activity that was either drug related or threatened the health, safety, or right to peaceful enjoyment of the premises.
We find that the trial court did not err in denying defendant’s exception of prematurity or vagueness. We also find that there is sufficient evidence to conclude that Ms. Robinson’s guests engaged in criminal activity that threatened the health, safety, or right to peaceful enjoyment of the premises.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Ms. Robinson leased an apartment from River Garden Apartments (“River Garden”). Her rental unit was a part of public housing as funding was received from the U.S. Department of Housing and Urban Development. Additionally,J^River Garden acts as an agent or instrument of the Housing Authority of New Orleans in operating the public housing units contained at the River Garden development. For the purposes of federal statutes and regulations, River Garden is considered a public housing agency.
Following complaints made to River Garden management and at least one letter titled “Disturbing the Peaceful Enjoyment,” Ms. Robinson received a notice to vacate her residence at 1811 Chippewa Street in the River Garden complex. River Garden cited her residence as a meeting place for narcotics dealers and guests of 1811 Chippewa Street selling narcotics in *355 and around the premises as its reasoning for the eviction. The notice further indicated that Ms. Robinson was previously-warned about the lease violations. Furthermore, the problem had become a safety and nuisance issue for the residents and management of River Garden. The notice informed Ms. Robinson that due to criminal activity by members of her household and others under her control, her lease was terminated.
Ms. Robinson secured counsel with Southeast Louisiana Legal Services after she received her notice to vacate. Ms. Robinson’s counsel then arranged an informal conference with River Garden management. During the conference, Ms. Robinson’s counsel was able to review pertinent documents relating to her eviction maintained in her tenant file.
Subsequently, a trial on the rule for possession was held. During the hearing, Armand Clavo, Quality of Life Director at River Garden, testified that Ms. Robinson was not evicted for engaging in criminal activity. Rather, the individuals Ms. Robinson invited or allowed to be at her residence, participated in criminal activity while on the property that resulted in her eviction.
[ 3Jayson Germann, who patrols River Garden for criminal violations, testified that on several occasions he set up surveillance on Ms. Robinson’s residence. He stated that he always considered it a “hub ... where if you visit the River Garden, that’s where you see people congregating ... and you see a lot of ... very suspicious people.” Mr. Germann further stated he spends a lot of time on his detail sitting near Ms. Robinson’s residence to make sure his presence is known so that no criminal activity -will occur.
Mr. Germann testified that during his patrol duties, he observed a man who was visiting Ms. Robinson’s residence engaged in criminal activity around the residence.[1] Based on his observations, Mr. Germann arrested the individual for possession with the intent to distribute pharmaceutical pills.
Mr. Germann also testified that he was to inform management of any lease violations; and at which time, he began taking photographs during his patrol duties. On one occasion, he took a photograph of two gentlemen who were often seen at Ms. Robinson’s residence. One gentleman became so irate when Mr. Germann took a photograph, Mr. Germann testified he “almost [arrested him] for threats and disturbing the peace,” but elected not to do so.
Officer David Aranda, who lives next door to Ms. Robinson, testified at the hearing that on two occasions he spoke to Ms. Robinson’s son and Ms. Robinson’s brother about smoking marijuana outside her residence. Officer Aranda explained to Ms. Robinson’s brother that he was not to be smoking marijuana outside and that the person whose name is on the lease is responsible for every guest. He further stated that on another occasion he spoke with Ms. Robinson’s son and her [4son’s guest who were smoking marijuana on the porch steps of the residence. He informed them that they were not to smoke marijuana outside, and if they chose to smoke they needed to do it elsewhere, not in front of a residence. Officer Aranda stated that he spoke with Mr. Clavo about the marijuana issue but did not file a formal complaint. Moreover, Officer Aranda testified that “it is just a hostile environment for anybody *356 and their family, children and families ... I feel uncomfortable sometimes if I am coming home late at night, I’ll have to make a pass or two just to make sure that it is safe to go inside.” When asked by the trial court if he felt his health, safety, and right to peaceful enjoyment of the residence was affected, Officer Aranda stated “[o]ne hundred percent.”
The trial court found that due to criminal activity taking place at or near Ms. Robinson’s apartment, the health, safety, and right to peaceful enjoyment of the premises by others was affected. From the trial court’s judgment, Ms. Robinson filed a suspensive appeal to this court.

STANDARD OF REVIEW

Am appellate court must review factual determinations made by the trial court using the manifest error or clearly wrong standard. Cottingim v. Vliet, 08-1263, p. 4 (La.App. 4 Cir. 8/12/09), 19 So.3d 26, 28-29; Fairway Estates Homeowners Ass’n, Inc. v. Jordan, 08-0949, p. 2 (La.App. 4 Cir. 5/20/09), 15 So.3d 1011, 1013. “When the factual findings are based on the credibility of witness’s testimony, the appellate court must give great deference to the fact finder’s decision to credit a witness’s testimony.” Cottingim v. Vliet, supra, (quoting Watters v. Dep’t of Soc. Servs., 08-0977, p. 8 (La.App. 4 Cir. 6/17/09), 15 So.3d 1128, 1142). Even if an appellate court feels “its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of 1 ^credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony.” Cormier v. Comeaux, 98-2378, p. 5 (La.7/7/99), 748 So.2d 1123, 1127; River Garden Apartments v. Horton, 06-0540, p. 2 (La.App. 4 Cir. 1/24/07), 948 So.2d 399, 401. Therefore, “[i]f a review of the entire record demonstrates that the trial court’s factual findings were reasonable, the appellate court must affirm.” Pitts v. Louisiana Citizens Prop. Ins. Corp., 08-1024, p. 3 (La.App. 4 Cir. 1/7/09), 4 So.3d 107, 108-09; River Garden Apartments v. Horton, supra.
If the trial court reaches its decision based upon questions of law, the appellate court must review the record using the de novo standard of review. Green v. Auto Club Group Ins. Co., 07-1468, p. 2 (La.App. 4 Cir. 10/1/08), 994 So.2d 701, 703; Cottingim v. Vliet, 08-1263 at p. 4, 19 So.3d at 29.
Ms. Robinson contends the trial court erred in denying her exception of prematurity and exception of vagueness. Additionally, Ms. Robinson argues that River Garden did not prove by a preponderance of evidence from which a trier of fact could reasonably conclude that Ms. Robinson, her household, or her guests had engaged in criminal activity that was either drug related or threatened the health, safety, or right to peaceful enjoyment of the premises. From our review of the record and the disputed issues, we find this case presents issues of law and fact.

PREMATURITY EXCEPTION

Ms. Robinson contends the trial court erred in denying her exception of prematurity. She asserts River Garden’s failure to provide notice in accordance with federal law as well as the lease mandates a reversal.
|fiA public housing agency may initiate an eviction proceeding without first granting an administrative hearing if the grievance involves criminal activity. 24 C.F.R. § 966.51(a)(2)(i). The relevant federal regulation provides:
When the PHA [public housing agency] is not required to afford the tenant the opportunity for a hearing under the PHA administrative grievance proce *357 dure for a grievance concerning the lease termination (see § 966.51(a)(2)), and the PHA has decided to exclude such grievance from the PHA grievance procedure, the notice of lease termination under paragraph (l )(3)(i) of this section shall:
(A) State that the tenant is not entitled to a grievance hearing on the termination.
(B) Specify the judicial eviction procedure to be used by the PHA for eviction of the tenant, and state that HUD has determined that this eviction procedure provides the opportunity for a hearing in court that contains the basic elements of due process as defined in HUD regulations.
(C) State whether the eviction is for a criminal activity as described in § 966.51(a)(2)(i)(A) or for a drug-related criminal activity as described in § 966.51(a)(2)(i)(B).
24 C.F.R. § 966.4(Z)(S)(v) (emphasis added).
The relevant contractual lease provision provides:
XIV (d)(1) The notice of termination to Resident shall state specific reasons for the termination, shall inform Resident of his/her right to make such reply as he/ she may wish, and of Resident’s right to examine The Site Manager documents directly relevant to the termination or eviction.
In the instant case, Ms. Robinson was not granted an administrative hearing. Because the notice to vacate was due to criminal activity, the notice failed to comply with subsections (A) and (B) of 24 C.F.R. § 966.4(Z )(3)(v). The notice was required to state that Ms. Robinson was not entitled to a grievance hearing and was required to state the judicial eviction proceeding to be used by River Garden and 17that HUD had determined that the eviction proceeding contains all the elements of due process as defined in HUD regulations.
Similarly, in accordance with the contractual lease, the notice was required to inform Ms. Robinson of her right to make a reply and her right to examine the site manager’s documents relating to the eviction. The record reflects that the notice to vacate lacked the foregoing information. Accordingly, Ms. Robinson’s notice to vacate violated federal regulations and the contractual provisions of her lease. We therefore, consider whether these violations mandate reversal.
Reversal is not warranted unless the error harmed or prejudiced the complaining party’s cause. Boutte v. Winn-Dixie Louisiana, Inc., 95-1123, p. 9 (La.App. 3 Cir. 4/17/96), 674 So.2d 299, 305. The party alleging error has the burden of showing that the error was prejudicial to their case. Id.
We find that Ms. Robinson was not harmed or prejudiced by River Garden’s failure to provide notice as required by federal law and the contractual provisions of her lease. Ms. Robinson received a “Notice to Vacate” on April 5, 2012, stating she had thirty days to vacate her apartment. The notice alleged the reasons for the termination of her lease were due to confirmed complaints involving criminal activity. Ms. Robinson obtained counsel and had an informal conference with River Garden. At the conference, Ms. Robinson and her counsel obtained copies of the pertinent information in her tenant file regarding the eviction. Likewise, Ms. Robinson was represented by counsel at the trial on the rule for possession and had an opportunity to cross-examine witnesses and present a defense.
*358 A review of the record demonstrates that Ms. Robinson was not harmed or prejudiced by River Garden’s failure to abide by federal regulations and contractual provisions of the lease. For these reasons, we find the trial court did not [ serr in denying Ms. Robinson’s exception of prematurity and reversal is not mandated.

EXCEPTION OF VAGUENESS

Ms. Robinson alleges the notice to vacate failed to provide sufficient detail of alleged criminal activity that constituted violations of the lease.
A reason for eviction and proper notice are essential requirements for a lessee to have due process. Flores v. Gondolier, Ltd., 375 So.2d 400, 403 (La.App. 3rd Cir.1979); See also Louisiana State Museum v. Mayberry, 348 So.2d 1274, 1276 (La.App. 4th Cir.1977). This court has held that “minimum requirements of due process require notification of the reason for eviction to allow preparation of a defense if any is available.” Louisiana State Museum v. Mayberry, supra.
The record reflects that Ms. Robinson received a thirty day notice to vacate. The notice to vacate listed the grounds for termination as Ms. Robinson’s home had become a meeting place for neighborhood narcotics dealers and guests at her residence were observed selling narcotics in the neighborhood. The notice to vacate also noted that Ms. Robinson was previously warned about the violations and at that meeting she stated the problem would cease.[2] Moreover, the notice to vacate cited that the problem continued even after the warning and had become a safety and nuisance issue for the residents and management at River Garden.
We find that Ms. Robinson was afforded due process. Ms. Robinson received a notice to vacate that provided detailed reasons for her eviction. | ^Moreover, Ms. Robinson was aware of the safety and nuisance issues as she was previously informed in writing and warned that such activity was a violation of her lease. Ms. Robinson, upon receiving the notice to vacate, also had the opportunity to review her tenant file with regard to her eviction at an informal conference. Thus, Ms. Robinson had adequate and sufficient notice to prepare a defense. We find the trial court did not commit reversible error in denying Ms. Robinson’s exception of vagueness.

SUFFICIENCY OF EVIDENCE

Ms. Robinson contends River Garden did not prove by a preponderance of evidence from which a trier of fact could reasonably conclude that Ms. Robinson, her household, or her guests had engaged in criminal activity that was either drug related or threatened the health, safety, or right to peaceful enjoyment of the premises.
River Garden does not contend that Ms. Robinson engaged in criminal activity that resulted in her eviction. River Garden does contend, however, that her household or her guests engaged in criminal activity that led to her eviction. This court has previously determined that where the lease refers to “a guest or other person *359 under the tenant’s control,” the tenant controls who has access to the premises and the tenant is responsible for their activities. River Garden Apartments v. Horton, 06-0540 at p. 3, 948 So.2d at 399. Likewise, under 24 C.F.R. 5.100 “other person under the tenant’s control” refers to:
[T]he person, although not staying as a guest (as defined in this section) in the unit, is, or was at the time of the activity in question, on the premises (as premises is defined in this section) because of an invitation from the tenant or other member of the household who has express or implied authority to so consent on behalf of the tenant.
|in24 C.F.R. 5.100 also defines premises as “the building or complex or development in which the public or assisted housing dwelling is located, including common areas and grounds.”
Here, the trial court heard testimony of witnesses and determined that Ms. Robinson had violated the terms of her lease. Specifically, the trial court found that the health, safety, and right to peaceful enjoyment of the residence were affected. Although Ms. Robinson was not personally involved in the criminal activity alleged, members of her household, guests, and others persons under her control participated in the complained of criminal activities.
Members of her household through their actions allowed or invited guests and other persons to the property; and, therefore, fell under Ms. Robinson’s control. The household members, guests, and other persons allowed on the property participated in the complained of activity that resulted in Ms. Robinson’s eviction.
At the hearing, Mr. Germann testified that during his patrol, he observed a man who was visiting Ms. Robinson’s residence engaged in criminal activity around the residence. Based on his surveillance, Mr. Germann arrested the individual for possession with the intent to distribute pharmaceutical pills.
Mr. Clavo testified that he received complaints of criminal activity and addressed the issue with Ms. Robinson prior to the notice to vacate. Similarly, at the hearing, there was testimony that a former River Garden resident, who was no longer permitted at River Garden, was seen at Ms. Robinson’s residence. The former resident was no longer allowed at River Garden due to “criminal-related activity” that occurred at his former River Garden apartment.
| nThe trial court also heard testimony from Officer Aranda who testified that he had occasion to witness Ms. Robinson’s brother, her son and her son’s guest smoking marijuana in front of her residence on more than one occasion. Officer Aranda addressed his concerns with Mr. Clavo. Additionally, Officer Aranda testified that he often feels uncomfortable coming home due to the hostile environment created by the number of people that congregate outside Ms. Robinson’s residence.
On appellate review, this court gives great deference to the trial court’s findings of fact and credibility determinations of witness testimony. In light of the testimony and the record, we find that there was sufficient evidence available for the trial court to reasonably conclude that Ms. Robinson was in violation of her lease. Members'of her household and the guests invited and allowed on the premises engaged in illegal activity that threatened the safety, health, and peaceful enjoyment of the premises.

DECREE

We find that trial court correctly denied Ms. Robinson’s exception of prematurity *360 and vagueness. Furthermore, the trial court had sufficient evidence to reasonably conclude that Ms. Robinson’s household and guests engaged in criminal activity that threatened the health, safety, or right to peaceful enjoyment of the premises. Accordingly, we affirm.
AFFIRMED

. Mr. Germann is employed by the New Orleans Police Department and has a detail patrolling River Gardens for criminal violations. He is responsible for informing management of lease violations; however, he is not responsible for enforcement of the lease provisions.

. During the first month of her lease, Ms. Robinson received a letter from River Garden titled "Disturbing the Peaceful Enjoyment,” requesting her presence at a mandatory meeting to discuss her household’s alleged involvement in a recent disturbance. The letter alleged that while New Orleans police officers attempted to disperse a crowd from the corner of St. James and Chippewa Streets, several of the subjects ran into her apartment. The letter also advised Ms. Robinson that harboring persons from a fleeing prosecution is a violation of her lease agreement.