| GUSTE HOMES RESIDENT MANAGEMENT CORPORATION | * | NO. 2020-CA-0110 |
|---|---|---|
| | * | |
| | | COURT OF APPEAL |
| VERSUS | * | |
| | | FOURTH CIRCUIT |
| RENARD THOMAS | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
FIRST CITY COURT OF NEW ORLEANS
NO. 2019-07997, SECTION "D"
Honorable Ernestine L. Anderson-Trahan,
* * * * * *
**Judge Joy Cossich Lobrano**
* * * * * *

(Court composed of Judge Edwin A. Lombard, Judge Joy Cossich Lobrano, Judge Dale N. Atkins)

Kenneth E. Pickering
PICKERING & COTOGNO
1515 Poydras Street, Suite 1800
New Orleans, LA 70112-3776

    COUNSEL FOR PLAINTIFF/APPELLEE

Hannah Adams
Southeast Louisiana Legal Services
1340 Poydras Street, Suite 600
New Orleans, LA 70112

    COUNSEL FOR DEFENDANT/APPELLANT

**AFFIRMED**

**JULY 29, 2020**

This is an eviction case. Defendant/appellant, Renard Thomas ("Thomas"), appeals the November 4, 2019 judgment of the First City Court for the Parish of Orleans ("city court") in favor of plaintiff/appellee, Guste Homes Resident Management Corporation ("Guste"), ordering Thomas' eviction. For the reasons that follow, we affirm.

On October 3 and 14, 2019, Guste filed a rule for possession of premises, seeking to evict Thomas from the unit he rented in the Guste Highrise, a public housing complex on Simon Bolivar Avenue in New Orleans.[1] The eviction request was based on Guste's allegations that Thomas violated the terms of his lease by failing to complete an annual recertification of income and family composition and by failing to pass an annual housekeeping inspection. According to the September 4, 2019 notice to vacate, annexed to the rule for possession, Guste stated that Thomas violated the lease in that he: failed to attend four scheduled annual

---

[1] The October 3, 2019 rule for possession incorrectly identifies the defendant-lessee as "Bernard Thomas." The October 14, 2019 amended rule for possession correctly names Renard Thomas as the defendant-lessee. We refer to both pleadings collectively as the rule for possession, as they involve the same allegations.

recertification meetings; failed to keep his unit in a safe and sanitary condition;

was "not [] living in the unit"; and failed to notify the site manager that he would

be absent from his unit for a period longer than one week.[2] The notice directed

Thomas to vacate the unit within fifteen days.

_____

[2] The lease signed on December 8, 2008 states, in relevant part:

> VII. Terms and Conditions
> The following terms and conditions of occupancy are made a part of the Lease;
> …
> (c) Re-determination of Rent, Dwelling Size, and Eligibility…
> (1) The family composition is to be recertified at least once a year. The Site Manager shall recertify the income of the family at least once a year if Resident chooses to pay income-based rent….
> (2) Resident promises to supply the Site Manager, when requested, with accurate information about: family composition, age of family members, income and source of income of all family members, assets, and related information necessary to determine eligibility, annual income, adjusted income, and rent. Failure to supply such information when requested is a serious violation of the terms of the Lease, and the Site Manager may terminate the Lease….
> …
> IX. Resident's Obligations
> Resident shall be obligated:
> …
> (e) To keep the dwelling unit and other such areas as may be assigned to Resident for exclusive use in a clean and safe condition.
> …
> (p) To give prompt prior notice to the Site Manager, in accordance with Section XIII hereof, of Resident's leaving dwelling unit unoccupied for any period exceeding one calendar week.
> …
> (y) To use reasonable care to keep the unit in such condition as to ensure proper health and sanitation standards for Resident, household members and neighbors.
> …
> XI. Inspections
> …
> (b) Other Inspections - The Manger will inspect the unit at least one time annually using HUD's Uniform Physical Condition Standards (UPCS) as a guideline but on a quarterly basis to check needed maintenance, Resident housekeeping, and other Lease compliance matters….
> …
> XIV. Termination of the lease
> In terminating the Lease, the following procedures shall be followed by the Site Manager and Resident:
> (a) This Lease may be terminated for serious or repeated violations of material terms of the Lease, … or to fulfill Resident obligations set forth in Section IX above, or for other good cause. Such serious or repeated violation of terms or other causes shall include but not be limited to:
> …

Trial was set on October 18, 2019. Guste appeared for trial, but Thomas did not. The city court rendered a default judgment of eviction in Guste's favor and ordered Thomas to vacate the premises within twenty-four hours. On October 22, 2019, Guste requested a warrant of possession of the premises from the city court.

On the same date, Thomas filed a motion for new trial, seeking to set aside the city court's judgment and admit new evidence. Thomas argued that he had been hospitalized, had been recovering at the homes of family members, and was not home to receive the notice to vacate or rule for possession; meanwhile, Thomas returned to his unit for the first time on October 22, 2019 to find the unit had been burglarized and "left [] a mess." Thomas contended that he had advised Guste's manager, Mary Wilson ("Wilson"), in advance of his hospitalization and temporary absence from his unit, and that Thomas had continued to pay rent to Guste.

On October 30, 2019, Thomas filed an answer and exception of prematurity, in which he argued that he was a person with disabilities under the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA"). He stated that on October 28 and 29, 2019 he made requests for reasonable accommodation for disability to Guste's attorney and that Guste had failed to grant an accommodation. In particular, Thomas sought more time to complete his annual recertification requirements and reinspection of his unit. He argued that Guste's lack of response to his accommodation request

---

(6) Failure to supply, in a timely fashion, any certification, release, information, or documentation on family income or composition needed to process annual reexaminations or interim re-determinations; …

was a defense to the eviction and/or rendered the eviction premature. Thomas annexed to his answer and exception an October 23, 2019 letter addressed from Dr. Anjali Niyogi, Associate Professor of Internal Medicine, Tulane University School of Medicine, stating that Thomas "was recently hospitalized" and "was discharged to his family's care in order to expedite his recovery and for general assistance with activities of daily living following his hospitalization."

The city court granted a new trial, which was first scheduled on October 30, 2019 and then continued to November 4, 2019. At the start of trial, the city court held a hearing on the exception of prematurity and denied the exception in open court. Thereafter, Wilson and Thomas gave testimony at trial.

Guste called Wilson to testify as its employee and representative. According to Wilson, the purpose of annual recertification is for Guste to review its tenants' income and family composition to ensure that they continue to meet eligibility requirements for Guste housing. Annual recertification is mandatory for all tenants, and Guste must provide a recertification notice to the tenant 120 days in advance. Four recertification notices were tacked to the door of Thomas' unit on the following dates: 120-day notice on May 20, 2019; 90-day notice on June 20, 2019; 60-day notice on June 25, 2019; and 30-day notice on July 9, 2019.

Guste's annual housekeeping inspection of Thomas' unit took place on August 28, 2019. Wilson and her staff attended the inspection and took photographs. Wilson identified photographs showing "disarray" in the unit and testified that clothing and various items were strewn throughout the unit. Wilson

4

testified that the unit was not safe and sanitary when inspected, which was a violation of the lease. Wilson issued Thomas a notice to vacate on September 4, 2019 based on the failed inspection and failure to comply with annual recertification. Wilson also attended a follow up inspection of Thomas' unit on September 5, 2019 and noted that there had been no improvement.

Wilson denied that Thomas informed her that he was going to be hospitalized. Wilson denied having received a reasonable accommodation request from Thomas and speculated that Guste's attorney may have provided the request to her supervisor.

Thomas next testified. He stated that he had been a Guste resident for over 20 years and had never previously failed a housekeeping inspection. He testified that he received the 120-day recertification notice, which contained a time and a date for a meeting. He testified that he met Wilson in her office and signed the logbook on the counter. He did not recall the date of the meeting, but believed it was in July 2019 or sometime "after May." According to Thomas, Wilson stated that she had access to his social security income statement but that he needed to "get [his] bank statements and come back." Thomas testified that, at this meeting, he advised Wilson of his upcoming procedure and did not return for a follow up meeting because he was hospitalized the first week of August.

Thomas gave no testimony about the reason for his hospitalization. His attorney objected to questioning about his medical condition, and the city court sustained the objection. Thomas testified that he was admitted to Tulane Hospital

in the first week of August, and his room was first on the seventh floor, then the fourth floor. He could not recall how many days he was in the hospital or the particular dates. Thomas testified that Dr. Anjali advised him that his medication would make him "woozy" or "dizzy" and that he would need to stay somewhere such that he was not alone. Thomas stated that he underwent the same procedure two years ago and that the medicine was "so strong."

When Thomas was released from the hospital, he stayed with his aunt, then his cousin. Thomas testified that he is married, his wife lives in Hammond, Louisiana, and they do not live together. Before getting married, he provided the marriage license to the Housing Authority of New Orleans and Guste and informed them that he would maintain a separate residence from his wife. Thomas did not see his wife after he was released from the hospital and had not seen her since his procedure. When questioned why Thomas did not go to his wife's house following the hospitalization, he stated that it was "personal."

Thomas testified that, during his absence, no one checked on his unit, and if something was tacked to his door, his neighbors would call him. Thomas believed that he and his belongings were safe in the building and that it takes an "act of congress" to get inside. Thomas testified that he returned to his unit in October 2019 and saw the eviction notice and other notices, which were inside the unit, not tacked to the door. He described the state of his unit as having been "ransacked." Clothes that were previously in his closet were left hanging on the sprinkler system

and thrown on the floor, and stacks of paper he left on tables had been thrown on the floor.

Thomas testified that he called the police and his attorney. A police officer came to Thomas' unit, took a report, asked what was missing, and Thomas was unable to identify any missing items at that time. The officer told him that the unit looked "staged." A detective also contacted him three or four days later. Thomas noted later that binders of documents were missing. Thomas testified that he has since cleaned the unit, that it would now pass inspection, and that if given an opportunity he would be able to complete his recertification.

Guste recalled Wilson as a witness. Wilson denied meeting with Thomas and denied that he informed her about an upcoming hospitalization. According to Wilson, Thomas did not submit anything to her in connection with 120-day recertification request. Guste introduced and Wilson identified pages of the visitor logbook from Wilson's office, dated between May 2019 and July 2019. Wilson testified that Thomas' name did not appear on those logs. Wilson stated, however, that she does not sit at the front desk or watch visitors sign the logbook.

On November 4, 2019, at the conclusion of the new trial, the city court rendered judgment granting the eviction and ordering Thomas to vacate the premises within 20 days. Thomas brought a suspensive appeal.

On appeal, Thomas raises two assignments of error:

1. First City Court erred in granting the Rule for Possession over Mr. Thomas's affirmative defense of failure to accommodate his disability in violation of federal civil rights law.

7

2. First City Court erred in denying Mr. Thomas' exception of prematurity for failure to consider his reasonable accommodation request, because Guste failed to engage in the required interactive process before eviction.

In reviewing a judgment of eviction, an appellate court reviews the lower court's findings of fact under the manifest error standard of review. *Mazzini v. Strathman*, 13-0555, p. 4 (La. App. 4 Cir. 4/16/14), 140 So.3d 253, 256. "Applying that standard, we must first find from the record that there is a reasonable factual basis for the lower court's findings of fact; second, the record must establish that the lower court's findings are not manifestly erroneous or clearly wrong." *Id.* (citing *Mart v. Hill*, 505 So.2d 1120, 1127 (La. 1987)). "Factual findings should not be reversed on appeal absent manifest error." *Id.* (citing *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989)).

"When the factual findings are based on the credibility of witness's testimony, the appellate court must give great deference to the fact finder's decision to credit a witness's testimony." *River Garden Apartments v. Robinson*, 12-0938, p. 4 (La. App. 4 Cir. 1/23/13), 108 So.3d 352, 356 (quotations omitted). "Even if an appellate court feels its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony." *Id.*, 12-0938, pp. 4-5, 108 So.3d at 356 (quotations omitted). "Therefore, '[i]f a review of the entire record demonstrates that the trial court's factual findings were reasonable, the appellate court must affirm.'" *Id.*, 12-0938, p. 5, 108 So.3d at 356 (quotations omitted). "Where legal errors of the trial

8

court have tainted the fact finding process, the verdict below is not reviewed under the manifest error standard and, if the record is complete, the appellate court may make a *de novo* review of the record and determine the preponderance of the evidence." *Hous. Auth. of New Orleans v. King*, 12-1372, p. 5 (La. App. 4 Cir. 6/12/13), 119 So.3d 839, 842.

"The dilatory exception of prematurity provided in La. Code Civ. Proc. art. 926 questions whether the cause of action has matured to the point where it is ripe for judicial determination." *Williamson v. Hospital Service Dist. No. 1 of Jefferson*, 04-0451, p. 4 (La. 12/1/04), 888 So.2d 782, 785. Appellate courts generally review a lower court's decision concerning an exception of prematurity for manifest error. *Landis Const. Co., LLC v. Reg'l Transit Auth.*, 15-0854, p. 6 (La. App. 4 Cir. 5/25/16), 195 So.3d 598, 602. "However, when resolution of an exception of prematurity involves a question of law, the appellate court undertakes a *de novo* review." *Id.*

On appeal, Thomas does not challenge the validity of the lease or its terms. He does not dispute that his failure to complete the annual recertification process or pass an annual housekeeping inspection was a violation of the lease. Rather, he argues that his eviction must be overturned because Guste failed to respond to his request for reasonable accommodation for his disability. This Court explained the elements of a reasonable accommodation claim under the FHA as follows:

> The FHA prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap." 42 U.S.C. § 3604(f)(2). A landlord engages in

unlawful discrimination under if FHA if he or she refuses "to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(F)(3)(B).

In order to establish a *prima facie* case against [the landlord] for failure to accommodate [his] disability under the Section 3604(F)(3)(B) of the FHA, [the tenant] must have been able to show, at minimum, the following:

> (1) That [he] suffers from a disability within the meaning of 42 U.S.C. § 3602(h);
> (2) That the owner knew of [his] disability or reasonably should be expected to know of it;
> (3) That an accommodation may be necessary to give the resident an equal opportunity to use and enjoy the dwelling;
> (4) That the requested accommodation is reasonable; and
> (5) The owner refused to make the accommodation.

*Overlook Mut. Homes, Inc. v. Spencer*, 666 F.Supp.2d 850, 855 (S.D. Ohio 2009), *aff'd*, 415 Fed.Appx. 617 (6th Cir. 2011) (quoting *DuBois v. Assoc. of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006)).

*Mazzini*, 13-0555, pp. 6-7, 140 So.3d at 257 (footnote omitted).

Thomas raises his reasonable accommodation argument through two different procedural vehicles, an exception of prematurity and an affirmative defense.

We first address Thomas' second assignment of error: the city court's denial of Thomas' exception of prematurity. Thomas' exception is based on Guste's alleged failure to exhaust administrative remedies. Thomas argues that his eviction was premature because Guste failed to open a dialogue with him to resolve his reasonable accommodation request prior to proceeding with the eviction.

No reported Louisiana case has held that an exception of prematurity must be granted where a lessor has not responded to a lessee's request for

accommodation. Thomas relies on *Douglas v. Kriegsfeld Corp.*, 884 A.2d 1109, 1121 (D.C. 2005) to contend that his accommodation request was timely and could be made any time before the eviction judgment was rendered. Citing to cases decided in other jurisdictions, Thomas argues that where an eviction proceeding is pending, and final judgment has not yet been rendered, the landlord must halt the eviction proceedings in order to engage in an interactive process to respond to the accommodation request.[3]

A timely raised exception of prematurity is typically the appropriate means, under the Louisiana Code of Civil Procedure, to address whether a plaintiff has complied with an appropriate administrative remedy prior to filing suit. *See Landis*, 15-0854, p. 6, 195 So.3d at 602. This exception is raised to argue that "a cause of action does not yet exist because of an unmet prerequisite condition." *Id.* A prematurity exception "is usually utilized in cases in which the applicable law or contract provides an administrative procedure as a precondition for judicial action." *Id.* "It is determined by the facts existing at the time suit is filed." *Id.*

We find no dispute in the record that Thomas, through counsel, made the accommodation request after Guste filed its rule for possession. It is also undisputed that, after the rule for possession was filed, Guste did not permit Thomas additional time either to attempt to pass a housekeeping inspection or to

---

[3] *See id.* at 1127; *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1156 (9th Cir. 2003); *Armant v. Chat-Ro Co., LLC*, No. 00-1402, 2000 WL 1092838, at *2 (E.D. La. Aug. 1, 2000); *Jankowski Lee & Assocs. v. Cisneros*, 91 F.3d 891, 895 (7th Cir. 1996), *as amended* (Aug. 26, 1996); *Hous. Auth. of City of Bangor v. Maheux*, 748 A.2d 474, 476 (Me. 2000); *Anast v. Commonwealth Apartments*, 956 F. Supp. 792, 801 (N.D. Ill. Jan. 16, 1997); *Cobble Hill Apartments Co. v. McLaughlin*, 1999 Mass. App. Div. 166, 1999 WL 788517, at *4 (1999); *City Wide Assocs. v. Penfield*, 409 Mass. 140, 143, 564 N.E.2d 1003, 1005 (1991).

provide any missing documentation required for his annual recertification. As these particular facts are not in dispute, Thomas' argument presents a legal question, and we must review whether the city court legally erred by failing to apply the administrative exhaustion doctrine in this case.

In pleading the exception of prematurity, the defendant bears burden of showing that "an administrative remedy is available, by reason of which the judicial action is premature." *Members of Grand Lodge of State v. Elected Bd. of Directors of Grand Lodge of State*, 18-0443, p. 4 (La. App. 5 Cir. 2/6/19), 265 So.3d 976, 979 (citing *Steeg v. Lawyers Title Ins. Corp.*, 329 So.2d 719, 720 (La. 1976)). An exception of prematurity based on the plaintiff's failure to exhaust administrative remedies may not be granted, however, where the applicable law or contract does not specify a precondition for judicial action. *See Landis*, 15-0854, p. 9, 195 So.3d at 604 (holding that Louisiana Public Bid Law does not provide for any administrative proceeding as a precondition to judicial action based on a violation of Public Bid Law).

We find no support in the Fair Housing Act, or in any of the cases Thomas cites,[4] for the argument that Guste must exhaust an interactive administrative procedure before a suit for eviction is filed or adjudicated. Thomas also makes no showing that the lease or any other contract between Thomas and Guste required Guste to exhaust an administrative remedy prior to eviction. Thus, we find no legal error in the city court's denial of Thomas' exception of prematurity.

---

[4] *See* n. 3, *infra*.

We next address Thomas' first assignment of error: his accommodation request as an affirmative defense. Thomas argues on appeal that, because he made a *prima facie* case that he was entitled to reasonable accommodation for his disability, the city court erred in granting the eviction. We disagree, as we find that Thomas did not meet his burden to show, on the evidence at trial, that the requested accommodation was "necessary" as required under the FHA.[5]

Very few Louisiana cases have analyzed reasonable accommodations under the FHA with respect to evictions. *See, e.g.*, *Mazzini*, 13-0555, p. 7, 140 So.3d at 258 (affirming eviction judgment and rejecting a lessee's accommodation argument where lessee failed to prove a qualifying disability under the FHA); *Renewal Homes v. Laneheart*, 17-0199, p. 11, 2017 WL 4700825, at *6 (La. App. 4 Cir. 10/18/17), --- So.3d ---, --- (affirming judgment denying eviction of mentally disabled lessee and finding lessor failed to comply with accommodations pursuant to participation in federally assisted program). Thomas cites to this Court's decision in *Laneheart*, *supra*, to argue that a lessor's failure to make a reasonable accommodation for a lessee's disability is an affirmative defense to an eviction.

The following principles apply to the parties' claims herein. The lessor has the burden of proving, by a preponderance of the evidence, a valid lease and that

---

[5] Thomas argues that at least one other court has found a request for more time for recertification is a reasonable accommodation request. He argues that, under similar facts, a federal district court denied in part a motion to dismiss a reasonable accommodation claim under Fed. R. Civ. Proc. 12(b)(6). In *Pinckney v. Carroll*, No. 18-12198, 2019 WL 6619484 (S.D.N.Y. Dec. 4, 2019), the court found that a tenant adequately stated a claim that her co-tenant mother suffered a stroke, was hospitalized, failed to timely submit required documents for recertification, and that thereafter her landlord denied her request for a hearing and refused to reinstate her Section 8 housing voucher. *Pinckney* provides us with no guidance in Thomas' appeal, however, because the federal court considered only the sufficiency of the tenant's allegations, not any evidence adduced at trial.

the violation of the lease provides sufficient grounds for an eviction. *Guste Homes Resident Mgmt. Corp. v. Thomas*, 12-0386, p. 8 (La. App. 4 Cir. 5/29/13), 116 So.3d 987, 991. The party pleading an affirmative defense bears the burden of proof on that defense, which must be established by a preponderance of the evidence. *Jeanmarie v. Peoples*, 09-1059, p. 6 (La. App. 4 Cir. 3/16/10), 34 So.3d 945, 950; *Touro Infirmary v. Marine Med. Unit, Inc.*, 96-2506, p. 7, n. 3 (La. App. 4 Cir. 5/21/97), 699 So.2d 90, 93. The lessee bringing a reasonable accommodation claim under the FHA bears the burden of proving that he had a disability for which the lessor failed to accommodate. *See Mazzini*, 13-0555, p. 8, 140 So.3d at 258; *see also Riser v. H.Y. Bell Mem'l Apartments*, 28,077, p. 6 (La. App. 2 Cir. 2/28/96), 669 So.2d 689, 692. The party claiming failure to accommodate under the FHA also bears the burden of showing that the requested accommodation is necessary. *See Harmony Haus Westlake, LLC v. Parkstone Prop. Owners Ass'n, Inc.*, No. 19-1034, 2020 WL 1241724, at *7 (W.D. Tex. Feb. 18, 2020)(citing *Elderhaven, Inc. v. City of Lubbock, Tex.*, 98 F.3d 175, 178 (5th Cir. 1996)); *Varrecchio v. Friends All. Hous. II, Inc.*, No. 18-8915, 2018 WL 6510740, at *2 (E.D. La. Dec. 11, 2018).

Thomas argues that, at the new trial, Guste judicially confessed to the first two factors of the reasonable accommodation claim: Thomas' disability and Guste's awareness of his disability. Thomas points to argument of counsel and the city court's statements from the bench acknowledging that Guste's residents are elderly or disabled, and that Thomas' disability was the reason for his housing at

14

Guste. Even so, we find that Thomas failed to demonstrate sufficient evidence of the third factor: whether the requested accommodation was "necessary to afford such person equal opportunity to use and enjoy a dwelling." *See* 42 U.S.C. § 3604(f)(3)(B).

Federal courts have compared the "necessity" factor to a causation requirement[6] and explained as follows:

> This requirement is divided into two considerations: is the accommodation necessary and will the accommodation afford equal opportunity to the disabled? In order for a requested accommodation to be necessary, the [aggrieved tenant] must show "a direct linkage between the proposed accommodation and the 'equal opportunity' to be provided to the handicapped person." *Bryant Woods Inn, Inc. v. Howard County, Md.*, 124 F.3d 597, 604 (4th Cir. 1997). If the requested accommodation "provides no direct amelioration of a disability's effect," it is not necessary. *Id.* With respect to the "equal opportunity" requirement, the FHA "does not require accommodations that increase a benefit to a handicapped person above that provided to a nonhandicapped person with respect to matters unrelated to the handicap." *Id.*

*Oxford House, Inc. v. City of Baton Rouge, La.*, 932 F. Supp. 2d 683, 693 (M.D. La. Mar. 19, 2013). *See also Riser*, 28,077, p. 6, 669 So.2d at 692 ("Even should we assume arguendo that [an aggrieved tenant] was handicapped, the record must further show that she was discriminated against *because of* her handicap in order to recover under the Fair Housing Act.")(Emphasis added).

Thomas contends that he satisfied the necessity factor because, although he waited until the final month of the 120-day period to complete his recertification, he found himself unexpectedly unable to complete the process because of his

---

[6] *See, e.g., Valencia v. City of Springfield, Illinois*, 883 F.3d 959, 968 (7th Cir. 2018); *Lapid-Laurel, LLC v. Zoning Bd. of Adjustment of Twp. of Scotch Plains*, 284 F.3d 442, 460 (3d Cir. 2002)(quoting *Bryant Woods Inn, Inc. v. Howard Cty., Md.*, 124 F.3d 597, 604 (4th Cir. 1997)).

hospitalization, and thereafter, needed more time. Nowhere in the record was any showing made as to the nature of Thomas' disability, medical condition or treatment requiring hospitalization, dates of hospitalization, or length or extent of recovery from said condition or treatment. Further, the record contains no facts as to whether the hospitalization at issue had any link to a disability. Moreover, no hospital or other medical records were admitted into evidence, and no medical expert witnesses were called to testify. At the new trial, the city court read into the record a physician's letter, but Thomas did not introduce the letter into evidence, Guste objected to the letter, the lower court did not rule on the objection, and Thomas did not proffer the letter.

Thomas testified that he had been in the hospital the first week of August, that a doctor told him that he should not be alone while on medication, and that he had recovered at the homes of his cousin and aunt until he returned to his unit in late October 2019. No other evidence was introduced to corroborate this testimony.

The city court heard conflicting testimony from Thomas and Wilson about Thomas' actions regarding the annual recertification. Thomas testified that he met with Wilson in approximately July 2019, signed a logbook at Wilson's office, and was told that the only remaining documentation he needed to produce to Guste were bank statements. He testified that, at this meeting, he told Wilson about his upcoming hospitalization and expected absence from his unit. Wilson denied in her testimony that the July 2019 meeting ever took place and that Thomas provided her with any documentation needed for his recertification. Guste also introduced the

logbook from Wilson's office into evidence, and Wilson was unable to locate Thomas' name in the logbook.

Thomas relies on *Laneheart*, *supra*, for his argument that Guste failed to do "all that is required of it to assist the [tenant] prior to instituting a petition to evict." We find such reliance misplaced. The *Laneheart* tenant introduced evidence through social worker and counselor testimony about the nature of her mental disability, her disability's effect on her ability to comply with certain terms of her lease, and how specific accommodations (scheduling appointments and sending notices through a caseworker) would be expected to alleviate lease violations. This Court found no evidence within the trial record of a breach of the lease. *Laneheart* provides very little discussion of the necessity factor, however, and we find the case distinguishable on its facts.

Here, the city court heard and weighed the credibility of witnesses' testimony, examined the documentation in evidence, and could have reasonably concluded that Thomas violated the lease and that there was insufficient evidence at trial that the accommodation was necessary to ameliorate the effects of a disability.[7] Consequently, under the circumstances presented in Thomas' appeal, we cannot find any manifest error in the city court's judgment granting the eviction.

---

[7] As we find Thomas has not met his burden on the necessity factor, he has not satisfied the requirements for a reasonable accommodation claim, and we find it unnecessary to reach the remaining factors.

We also reject Thomas' argument that the city court committed legal error in its oral reasons for judgment, stating that Guste had a duty to help the tenant and did so through recertification notices in advance of the applicable deadline. According to Thomas, Guste provided these notices prior to the accommodation request, and such notices cannot legally be a response or accommodation for disability. It is well-settled that appellate courts review judgments, not reasons for judgment; "on appeal, this Court examines the result of that judgment, not the reason why the trial court reached that result." *Johnson v. Henderson*, 04-1723, p. 4 (La. App. 4 Cir. 3/16/05), 899 So.2d 626, 628. The in-court statements form no part of the judgment of eviction. We find no legal error.

Accordingly, for the reasons discussed above, we affirm the judgment of the city court.

**AFFIRMED**